IN RE the MARRIAGE OF: Desmond J. HARRIS, Plaintiff-Respondent and Cross-Appellant,

v.

Constance L. HARRIS, Defendant-Appellant and Cross-Respondent.

Court of Appeals

*No. 87–0210. Submitted on briefs June 28, 1987.—Decided September 24, 1987.*

(Also reported in 415 N.W.2d 586.)

█

For the defendant-appellant and cross-respondent the cause was submitted on the briefs of *Maureen L. Kinney* and *Johns & Flaherty, S.C.,* of La Crosse.

For the plaintiff-respondent and cross-appellant the cause was submitted on the briefs of *Janet A. Jenkins* and *Arneson & Jenkins, S.C.,* of La Crosse.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. Constance Harris appeals and Desmond Harris cross-appeals from a judgment requiring Desmond to pay Constance $400 per month maintenance and a $1,500 contribution to her attorney fees. The issues are whether the trial court abused its discretion by determining: (1) that there had been a substantial change in circumstances justifying a maintenance modification, (2) that Desmond should pay $400 per month maintenance, (3) that maintenance payments not be retroactive, and (4) that Desmond should pay a $1,500 contribution to Constance's attorney fees.

Because the trial court failed to explain why it did not consider periodic gifts to Constance of $400 to $500 per month when it assessed her needs, we reverse and remand issue two. In all other respects, we conclude

the trial court did not abuse its discretion. We therefore affirm in part and reverse in part.

## FACTS

Constance and Desmond's 1967 stipulated divorce judgment required Desmond to pay alimony of $190 per month. In 1970, the court reduced alimony to $160 per month. In 1975, the court further reduced alimony to $60 per month. In 1980, Constance resigned her employment to permanently reside in Costa Rica with her daughter. However, after three months, she returned to the United States because of the unstable political situation in Costa Rica. She was unable to find employment paying as well as her former employment.

In April 1984, Constance petitioned to increase her maintenance.[1] Desmond counter-petitioned to terminate maintenance. The court granted Desmond's motion, but we reversed and remanded because the trial court's termination of maintenance was based on its mistaken view that maintenance can only be a short-term remedy. *Harris v. Harris,* No. 84–1627, unpublished slip op. at 5 (Wis. Ct. App. Jan. 27, 1986).

On remand in 1986, the trial court concluded Constance needed $400 per month maintenance. It found that this award would help Constance have a standard of living similar to the one she enjoyed before the divorce. It ordered its award to commence December 1986, rather than retroactive to April 1984. The court also ordered Desmond to pay a $1,500

---

[1] The term "maintenance" was substituted for the term "alimony" by secs. 42 and 48, ch. 105, Laws of 1977.

contribution toward Constance's attorney fees incurred after remand.

## STANDARD OF REVIEW

An award of maintenance is within the trial court's discretion. *Overson v. Overson,* 125 Wis. 2d 13, 17, 370 N.W.2d 796, 798 (Ct. App. 1985). We uphold discretionary determinations absent an abuse of discretion. *Colby v. Colby,* 102 Wis. 2d 198, 207–08, 306 N.W.2d 57, 62 (1981). We uphold findings of fact if, upon review of the record, they are not clearly erroneous. *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643–44, 340 N.W.2d 575, 577 (Ct. App. 1983). In reviewing a maintenance award pursuant to sec. 767.32(1), Stats., the trial court must re-examine the factors listed in sec. 767.26. *Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 198, 327 N.W.2d 674, 679 (1983). However, the court need only consider the sec. 767.26 factors applicable to the case. *In re Marriage of Trattles v. Trattles,* 126 Wis. 2d 219, 228, 376 N.W.2d 379, 384 (Ct. App. 1985). A maintenance award can only be altered if a substantial change in financial circumstances has occurred. *Van Gorder,* 110 Wis. 2d at 195, 327 N.W.2d at 677.[2] In adjusting maintenance, the court must consider the standard of living the receiving spouse was accustomed to in the marriage. *Van Gorder,* 110 Wis. 2d at 193, 327 N.W.2d at 677. Once a court finds that there has been a substantial change in the financial situation, the court may "alter

---

[2]The change necessary has also been described as a "material change in the circumstances." *Moore v. Moore,* 89 Wis. 2d 665, 669, 278 N.W.2d 881, 883 (1979), quoting *Miner,* 10 Wis. 2d at 441–42, 103 N.W.2d at 6.

573

such judgment respecting the amount of such mainte-
nance ... and the payment thereof ... and may make
any judgment respecting any of the matters which
such court might have made in the original action
...." Sec. 767.32(1). "[P]revious decisions [regarding
maintenance] can serve only as general guidelines [to
subsequent decisions regarding maintenance.] ..."
*Gorman v. Gorman,* 391 N.E.2d 70, 73 (Ill. App. 1979).

The test we apply when reviewing a trial court's
determination that circumstances have substantially
changed is less clear.[3] The "before" and "after"
circumstances, and whether a change has occurred
are facts, which we review under a clearly erroneous
test. Sec. 805.17(2), Stats. Whether a change is sub-
stantial or material is a legal standard, ordinarily a
question of law. *State v. Trudeau,* 139 Wis. 2d 91, 103,
408 N.W.2d 337, 342 (1987). However, where a trial
court's legal conclusion is intertwined with its factual
findings, we should give weight to the trial court's
decision, though that decision is not controlling.
*Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d
357, 361 (1983). This standard was applied to "reason-
ableness" in *Wassenaar.* A determination that some-
thing is "reasonable," "substantial" or "material"
requires a value judgment. All three terms are heavily

---

[3]*Fobes v. Fobes,* 124 Wis. 2d 72, 80–82, 368 N.W.2d 643, 646–47
(1985) and *Poehnelt v. Poehnelt,* 94 Wis. 2d 640, 649, 289 N.W.2d
296, 300 (1980) examined modification of support and mainte-
nance awards. Those cases focused, however, on the amount by
which an award should be changed, not on whether circumstances
had changed substantially, thereby permitting the trial court to
consider modifying the award. *Fobes* and *Poehnelt* hold that when
a trial court concludes circumstances have substantially changed,
whether an award modification should occur and the amount of
the modification are discretionary.

574

dependent upon interpretation and analysis of underlying facts. We conclude that we should give weight to a trial court's conclusion that a change in circumstances is substantial.

## CHANGE OF CIRCUMSTANCES

The rule in 1967, as now, was that if possible, alimony, together with property division and child support, would be enough to maintain Constance and her family at the standard of living enjoyed during the marriage. *See Miner v. Miner,* 10 Wis. 2d 438, 445–46, 103 N.W.2d 4, 8 (1960) (purpose of alimony, considered with wife's income, is to maintain wife at manner in which she is entitled to live).

At the 1986 hearing, the court determined that Constance had shown a substantial change of circumstances which occurred when she terminated her $12,816 a year job to go to Costa Rica. In our earlier decision in this case, we concluded that the trial court could consider Constance's "Costa Rica" decision in assessing her need for support, but under the circumstances, could not deny her maintenance on that ground alone. *Harris, supra,* slip op. at 5.

The court found that Constance's "Costa Rica" decision was partly responsible for her present poor economic condition. However, it found the decision not "utterly foolish," that Constance had not intentionally placed herself in a position where maintenance was required, and that age and limited employability hampered Constance in her good faith effort to recover from her decision. These findings are not clearly erroneous.

The court found Constance's expenses of $1,413 per month reasonable. The court also found that

Constance's income was $1,055 per month. The court reasoned that maintenance of $400 a month would allow Constance to meet current expenses and provide additional funds which would allow her to live closer to the standard of living she enjoyed during the marriage. These findings are not clearly erroneous.

The court considered Constance's "Costa Rica" decision, determined she should not suffer for it, and concluded that Constance had shown a substantial change of circumstances. Giving weight to the trial court's conclusion, we also conclude that Constance has shown a substantial change in circumstances.

## MARRIAGE STANDARD OF LIVING

Desmond argues that the court erred by comparing Constance's 1986 circumstances with the parties' circumstances prior to 1967 rather than comparing Constances 1986 circumstances with those existing in 1975 when the court last reviewed Constance's alimony request.

The trial court considered the standard of living during the parties' marriage and compared this with Constance's 1986 needs. The language of sec. 767.32(1), Stats., is broad.[4] *Van Gorder* suggests, by referring to the purpose of maintenance, that the comparison in any modification proceeding be between the condi-

---

[4]Section 767.32, Stats., provides:

(1) After a judgment providing for ... maintenance payments under s. 767.26 ... the court may ... on the petition of either of the parties ... revise and alter such judgment respecting the amount of such maintenance ... and the payment thereof ... and may make any judgment respecting any of the matters which such court might have made in the original action ....

tions at the time of the marriage or divorce judgment and the conditions at the time of the modification request proceeding. "Maintenance payments can be justified on one ground only—the obligation of the supporting spouse to support the other spouse in the manner to which that spouse was accustomed during the marriage." *Van Gorder,* 110 Wis. 2d at 193, 327 N.W.2d at 677.

The purpose of any maintenance adjustment is to fulfill the objective of the original judgment, which is to maintain the dependent spouse at the standard of living enjoyed during the marriage.[5] Sec. 767.26(6), Stats.[6] We conclude the trial court correctly compared Constance's 1986 financial condition to her financial condition during the marriage.

### AMOUNT OF MAINTENANCE

Constance claims the $400 maintenance award is insufficient to meet her needs and is not based on Desmond's ability to pay. Desmond considers the award excessive. Constance argues that the court found her budget of $1,413 per month modest. Con-

---

[5]In this case we do not consider compensatory maintenance payments, which do not require a finding of need for support. *Marriage of Haugan v. Haugan,* 117 Wis. 2d 200, 211, 343 N.W.2d 796, 802 (1984).

[6]Section 767.26, Stats, provides:

Upon every judgment of ... divorce ... the court may ... order ... maintenance payments to either party for a limited or indefinite length of time after considering:

(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

stance's income, together with $400 per month maintenance, is $1,455 per month. However, she contends that the maintenance award does not allow her to "purchase a washer and dryer or to replace her 1972 automobile that was in poor repair." She also claims that she had to "forego non-emergency medical care" and that there was "insufficient money to belong to athletic clubs or other organizations," amenities which the parties enjoyed during the marriage.

At the 1986 hearing, Constance did not include a new car in her budget, she did not assert that she had foregone non-emergency medical care, she did not tell the court how much she needed for a washer and dryer, and she did not say she wished to join an athletic club or any other organization. She cannot now be heard to complain that the trial court failed to give her something for which she never asked and for which she provided no cost information.[7]

---

[7]At the 1986 hearing, Constance told the court she wanted to continue to drive her 1972 Caprice automobile with a stated value of $500. She testified that she had recently paid $1,200 for car repairs. Constance's budget showed $150 per month as auto expense. Constance never presented evidence regarding the type of car the family owned during the marriage or how often a new car was bought. Constance provided no evidence that she had foregone non-emergency medical care. She testified that she could not afford $900 for dental work, yet her budget shows $100 per month dental expense. Constance complains she cannot afford a washer and dryer, but has $25 per month budgeted for laundry and dry-cleaning. She did not tell the trial court how much she needed to purchase these items. She testified to having an economy phone package, yet her budget shows $38 per month for a telephone. Constance testified that she would like to have season symphony tickets, go to school and take extra classes, be active in her club, and have music in the house. She said she was able to do these things during her marriage. She asked for $800 a month

The trial court properly based its $400 award on the evidence Constance presented regarding her needs. The court said its award would allow Constance to meet her current expenses and provide some additional funds which will more closely approximate Constance's standard of living during marriage.

Desmond does not argue that he cannot pay more, and the trial court correctly concluded that Constance is not entitled to more maintenance simply because Desmond can pay it. The court was entitled to consider that its maintenance decision was being made nineteen years after the divorce and that Desmond should not now be punished for reaching the point where he can enjoy a comfortable retirement with his current spouse. The court also considered Desmond's argument that he should not bear responsibility for Constance's "Costa Rica" decision. The court noted that Constance's financial statements were not particularly clear or precise, although they had not been specifically impeached. The court considered Constance's need, Desmond's ability to pay, and other factors appropriate to this case. Its decision was rational. The trial court therefore did not abuse its discretion by making a maintenance award of $400.

Desmond argues the trial court had no reasonable basis to award $400 per month maintenance to Constance and that the award constituted a 600 percent increase from the 1975 maintenance award. He contends the trial court did not take into proper

maintenance. However, Constance presented no evidence regarding the actual cost of these items. Her budget shows $100 per month for entertainment, $5 per month for clubs and $15 per month for hobbies. The trial court's award provided income in excess of her budget. No other evidence pertaining to her needs was presented at the 1986 hearing.

consideration unrefuted expert testimony establishing that $400 per month permitted Constance to live at a higher living standard that she did during the marriage.

The trial court noted that it considered Desmond's expert's opinion as limited in usefulness because the expert's testimony did not refer to the standard of living during the marriage, but only compared 1975 with 1986 circumstances. The court did not consider itself bound by the expert's opinion in any case, but only considered it "to the extent it [was] helpful." Because we have already concluded that the trial court correctly compared pre-divorce financial circumstances with financial conditions in 1986, it follows that the trial court correctly gave limited weight to the expert's testimony.

## GIFTS AS INCOME

Desmond claims the court abused its discretion by not considering as income Constance's children's $400–500 monthly contributions to her, which reduced her need for maintenance. The court mentioned these payments in its findings of fact, but not thereafter.

There is no consensus on whether courts should consider gifts as income in determining maintenance needs. While some cases have held income from all sources must be taken into account,[8] other cases have

---

[8]See Bissell v. Bissell, 191 N.W.2d 425, 427–28 (Minn. 1971) (fact that male friend had given the husband's former wife $11,000 in gifts over a period of two years produced a substantial change in circumstances which justified a reduction in alimony); In re Marriage of Bosacker, 609 P.2d 253, 256 (Mont. 1980) (decision to reduce maintenance, partly based on a promise by the wife's daughter to provide the wife a place to live, was not abuse of discretion); Brister v. Brister, 594 P.2d 1167, 1171 (N.M. 1979)

held it was not error to exclude gifts in the determination of the recipient spouse's income.[9] Still other cases have indicated gifts may be included in determining income, but not in the case under consideration.[10]

(since recipient's *actual* need is the criterion, wife's income from cohabitating male should be weighed in determining the maintenance to be paid); *Shannon v. Shannon,* 270 S.E.2d 785, 787 (W.Va. 1980) (fact that wife's adult-aged, fully-employed daughter was residing with the wife reduced the need of the wife, justifying a reduction in maintenance); *Nott v. Nott,* 66 A.L.R. 219, 222 (England, 1901) (a relative's voluntary contribution to the wife ought to be taken into account in estimating the wife's income to determine maintenance since it was only common sense that, when dealing with actual income, the total actual income must be taken into account without considering the source from which it is derived). Wisconsin cases have held that it is the actual financial state of the former spouse that determines the need for maintenance, although gifts were not directly considered. *Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 327 N.W.2d 674 (1983); *Overson v. Overson,* 125 Wis. 2d 13, 370 N.W.2d 796 (Ct. App. 1985).

[9]*See Pegram v. Pegram,* 219 S.W.2d 772, 776 (Ky. 1949) (maintenance to a former wife cannot be based upon the assumption that relatives will furnish her a living); *Caire v. Caire,* 452 So. 2d 194, 196 (La. App. 1984) (financial assistance by a parent does not relieve a spouse from the support obligation); *Ely v. Ely,* 427 A.2d 361, 363 (Vt. 1981) (court did not abuse its discretion by not considering the wife's mother's pattern of gifts as diminishing the wife's need for support).

[10]*See Fisher v. Fisher,* 36 S.W.2d 635, (Ky. 1931) (financial assistance to a former wife by her sons ought not to relieve a husband of his maintenance responsibilities); *Gray v. Gray,* 451 So. 2d 579, 587 (La. App. 1984) (court found that under the circumstances, the legal obligation of the husband to pay maintenance is not removed by the gifts of another); *Shelton v. Shelton,* 395 So. 2d 899, 900 (La. App. 1981) (financial assistance provided by a wife's mother where wife was needy does not relieve husband of the obligation of support to former wife in these circumstances); *Bernard v. Broussard,* 128 So. 2d 787, 790 (La. App. 1961)

A rule requiring the automatic exclusion of gifts from a court's consideration would encourage parties to mask as gifts those resources normally considered "income" when determining maintenance. Also, it is not possible to predict the differing circumstances of divorces, and adopt a rule which will always be fair. It is better to allow trial courts to consider the effect of gifts "as one of the intertwined circumstances used in the complex task of measuring, as against the husband's ability to pay, the wife's basic needs for maintenance. ..." *Harris v. Harris,* 127 So. 2d 747, 750 (La. App. 1961). A court may choose to evaluate the effect of a gift by its apparent or ulterior purpose, its source, the probability of it recurring in a regular fashion, or by using other rational factors.

Though we conclude that consideration of gifts in setting maintenance payments is discretionary, the exercise of discretion is not the equivalent of unfettered decisionmaking. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981). A discretionary decision must be the product of a rational mental process by which the facts of record and law relied upon are considered, resulting in a reasoned and reasonable determination. *Id.* Here, though the trial court's findings of fact show the existence of gifts to Constance, the court did not explain why its arithmetical conclusions as to Constance's needs omitted the

(daughter's support of mother did not excuse the husband of his duty to his former wife, but it could be taken into consideration); *Harris v. Harris,* 127 So. 2d 747, 750 (La. App. 1961) (former wife's father's support could be considered but did not excuse the husband from his duty to support his needy wife); *Lord v. Lord,* 16 P.2d 933, 935 (1932) *modified on other grounds,* 24 P.2d 292 (N.M. 1933) (the fact that the former wife's father supported her may be considered in awarding or modifying alimony, but not in this case).

gifts. We are left with the question: Why did the trial court exclude the gifts in Constance's needs assessment? *Bahr v. Bahr,* 107 Wis. 2d 72, 82, 318 N.W.2d 391, 397 (1982). Because the trial court may have overlooked the gifts or may have undisclosed reasons for omitting the gifts, we conclude we should remand the gift issue for re-examination and a determination of what part Constance's gifts from her children should play in her needs assessment. The trial court should give the reasons for its decision.

## DESMOND'S PENSION

Constance argues that Desmond's pension should be divided between them. The stipulated 1967 judgment did not mention Desmond's military pension in the property division. At that time, the court did not consider the value of Desmond's military pension in the assets available for division. However, we cannot do so now. Unlike maintenance determinations, property divisions are fixed for all time. *In re Marriage of Rintelman v. Rintelman,* 115 Wis. 2d 206, 210, 339 N.W.2d 612, 614 (Ct. App. 1983), *aff'd,* 118 Wis. 2d 587, 348 N.W.2d 498 (1984).

 Desmond's pension payments are income upon which to base his ability to pay maintenance, but Constance is not automatically entitled to half the payments.

> After the marriage is terminated, the parties are no longer considered partners, and the contribution toward the maintenance of a former spouse is to be treated under a basic concept of need by the dependent party and the corresponding ability to

pay by the supporting party, with consideration of other supplementary factors.

*Bahr, supra,* 107 Wis. 2d at 84, 318 N.W.2d at 398. The trial court properly considered Desmond's pension payments as nothing more than a source for maintenance.[11]

## RETROACTIVE MAINTENANCE

Constance claims the court abused its discretion by not ordering the maintenance awarded in 1986 retroactive to 1984.

The trial court's previous decision, reversed on appeal, amended the divorce judgment by terminating maintenance. That decision was valid until reversed. *Slabosheske v. Chikowske,* 273 Wis. 144, 151–52, 77 N.W.2d 497, 501 (1956). A court can only make those maintenance judgments allowed by statute. *Whitwam v. Whitwam,* 87 Wis. 2d 22, 27, 273 N.W.2d 366, 368 (Ct. App. 1978). A *nunc pro tunc* order can only correct "mechanical errors," and cannot change a past judg-

---

[11]*In re Marriage of LaRocque,* 139 Wis. 2d 23, 39–40, 406 N.W.2d 736, 742–43 (1987) discussed the two objectives of an original maintenance award—support and fairness. Because divorce terminates a marriage partnership, an ex-spouse by definition does not contribute to the marriage after the divorce. *LaRocque,* 139 Wis. 2d at 38, 406 N.W.2d at 742. Thus, fairness considerations begin to change at divorce, and involve other factors where, as here, maintenance is requested many years after a divorce. The trial court properly recognized this change when it considered Constance's request. In any event, the effect of *LaRocque* will be carried forward after divorce because, as we have held, requests for maintenance alteration compare economic conditions prior to and at the time of a divorce with those conditions at the time of a modification request, together with changing fairness factors.

ment to what it ought to have been. *In re Marriage of Strawser v. Strawser,* 126 Wis. 2d 485, 490, 377 N.W.2d 196, 199 (Ct. App. 1985). Maintenance and support depend upon similar factors. *Anderson v. Anderson,* 72 Wis. 2d 631, 642, 242 N.W.2d 165, 171 (1976). Retroactive child support payments are prohibited. *Marriage of Greenwood v. Greenwood,* 129 Wis. 2d 388, 391, 385 N.W.2d 213, 214 (Ct. App. 1986). Constance cites no authority permitting retroactive maintenance.[12] We conclude the trial court correctly ordered maintenance payments to begin in 1986.

## *OTHER ISSUES*

Both Desmond and Constance obliquely raise other issues. Desmond contends the trial court did not consider his health and Constance claims the court did not consider Desmond's tax consequences. Desmond claims Constance waived her right to maintenance and is estopped from seeking reinstatement.

The court said that it was considering only the sec. 767.26, Stats., criteria relevant to this case. Since pension payments are Desmond's main source of income, Desmond has not shown how his health problems diminish his ability to pay maintenance. With no evidence of a causal connection, health is irrelevant to the maintenance issue.

---

[12]Judge Sundby suggests that perhaps a spouse may protect his or her right to maintenance during the pendency of a motion for an increase in maintenance by petitioning for temporary maintenance under sec. 767.23(1)(d), Stats. An order made by the family court commissioner under this paragraph is reviewable by the trial court under sec. 767.23(1n) and 767.13(6). An order by the court upon such review would be reviewable when the court enters a final order or judgment determining maintenance under sec. 767.32. Judge Gartzke joins in this footnote.

The trial court considered its $400 a month maintenance award sufficient to maintain Constance's pre-divorce standard of living. The court said that Constance was not entitled to more than that amount simply because Desmond could afford it. Therefore, Desmond's tax consequences are irrelevant.

In July 1979, Constance wrote a letter to the clerk of courts telling him to stop sending maintenance payments. Desmond argues that this letter waived maintenance and that maintenance cannot be reinstated once waived. He cites sec. 767.32, Stats., for support. In 1984, the trial court concluded this constituted a waiver of maintenance and terminated Constance's maintenance on that basis. We reversed this conclusion in our earlier decision in this case. *Harris, supra,* slip op. at 5. A maintenance waiver is valid only if contained within a judgment.[13] There is no valid judgment waiving maintenance.

## *ATTORNEY FEES*

The award of attorney fees is discretionary with the trial court. *In re Marriage of Kastelic v. Kastelic,* 119 Wis. 2d 280, 290, 350 N.W.2d 714, 719 (Ct. App. 1984). In awarding attorney fees, the court must find a need for the contribution, that the paying spouse can

---

[13]Section 767.32(1), Stats., provides in part:

After a judgment providing for . . . maintenance payments under s. 767.26 . . . the court may . . . on the petition of either of the parties, . . . revise and alter such judgment respecting the amount of such maintenance . . . except that a judgment which waives maintenance payments for either party shall not thereafter be revised or altered in that respect.

afford to contribute, and that the total fee is reasonable. *Holbrook v. Holbrook,* 103 Wis. 2d 327, 343, 309 N.W.2d 343, 351 (Ct. App. 1981). Desmond claims Constance has no need for the contribution. Constance claims the court erred in not awarding attorney fees from a previous hearing in this case.

The trial court considered the total fee, and found that Constance needed the contribution, and that Desmond could afford to contribute. The court based its findings on a review of Constance's financial statements. The court found her budget reasonable. Desmond does not challenge the court's finding that he could afford to contribute, or the reasonableness of the total fee. The trial court's findings are not clearly erroneous, and its award is based on Constance's budget which leaves little room for attorney fee payments. The trial court employed a rational basis for awarding the fees. No abuse of discretion exists.

Constance claims the trial court abused its discretion by not awarding her attorney fees from both the 1984 hearing and the 1986 hearing. However, she concedes that her 1984 fee motion was originally denied. Therefore, the trial court could not *nunc pro tunc* grant Constance's request for contribution to her 1984 fees. *In re Marriage of Strawser, supra,* 126 Wis. 2d at 490, 377 N.W.2d at 199. The trial court ordered Desmond to contribute $1,500 to Constance's $1,888 attorney fees incurred after remand. Constance suggests that $3,000 would be more appropriate because of her 1984 fees. Since the 1984 fees may not be considered, and Constance does not attack the reason-

ableness of the $1,500 award as compared with the 1986 fees of $1,888, we affirm the trial court's award.[14]

*By the Court.*—Judgment affirmed in part and reversed in part, and cause remanded for further consideration. No costs to either party.

---

[14]Constance also implies that the trial court abused its discretion by failing to require Desmond to pay attorney fees at a rate greater than $75 per month. However, Constance cites no authority for her argument and has not clearly shown an abuse of discretion. *See Colby,* 102 Wis. 2d at 207–08, 306 N.W.2d at 62 (party alleging abuse of discretion has burden to clearly show the abuse); *State v. Shaffer,* 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 378 (Ct. App. 1980) (little weight is given to arguments without authority). Therefore we do not consider this argument further.