IN RE the MARRIAGE OF:

## Julie A. KENYON, Joint-Petitioner-Appellant-Petitioner,

v.

## Ralph C. KENYON, Joint-Petitioner-Respondent.

Supreme Court

*No. 02–3041. Oral argument October 6, 2004.—Decided December 15, 2004.*

2004 WI 147

(Also reported in 690 N.W.2d 251.)

51

For the joint-petitioner-appellant-petitioner there was a brief by *Earl H. Munson* and *Boardman, Suhr, Curry & Field, LLP,* Madison, and oral argument by *Earl H. Munson, Jr.*

For the joint-petitioner-respondent there was a brief (in the court of appeals) by *Charles Schutze* and *Schutze Law Office,* Sun Prairie, and oral argument by *Charles J. Schutze.*

¶ 1. JON P. WILCOX, J. This is a review of an unpublished court of appeals decision, *Kenyon v. Kenyon,* No. 02–3041, unpublished slip op. at 1 (Wis. Ct. App. Nov. 26, 2003), which affirmed an order of the Circuit Court for Dane County, Moria Krueger, Judge, that denied Julie Kenyon's motion to increase a maintenance award.

¶ 2. We hold that for purposes of evaluating a substantial change in the parties' financial circumstances during a maintenance modification proceeding, the appropriate comparison is to the set of facts that existed at the time of the most recent maintenance order, whether that is the original divorce judgment or a previous modification order. At the hearing, the circuit court should adhere to the findings of fact made in the previous proceeding and may not retry the issues decided in that proceeding. It should compare the facts regarding the parties' current financial status with those surrounding the previous order in determining whether the movant has established the requisite substantial change in circumstances so as to warrant modification of the maintenance award. Further, once a party has demonstrated the requisite substantial change in financial circumstances, the circuit court is

not bound by either issue preclusion or claim preclusion to reinstate the amount of maintenance established in the original judgment of divorce, especially when the judgment of divorce has been previously revised by an order modifying maintenance payments.

¶ 3. However, we conclude that the circuit court in this case applied the wrong legal standard in rendering its decision because it focused chiefly on Julie Kenyon's need for maintenance at her present standard of living and whether it would be inequitable to force Ralph Kenyon to pay additional maintenance for an indefinite period. Last term, in *Rohde-Giovanni v. Baumgart*, 2004 WI 27, ¶ 31, 269 Wis. 2d 598, 676 N.W.2d 452, we clarified that once a substantial change in the parties' financial circumstances is demonstrated, the circuit court must consider the dual maintenance objectives of support and fairness when modifying a maintenance award. Here, in conformity with the controlling precedent at the time, the circuit court did not consider the fairness objective in relation to both parties. Therefore, we reverse the decision of the court of appeals and remand for a new hearing under the appropriate standard.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶ 4. The facts are undisputed. Ralph and Julie Kenyon were married on March 25, 1977. Both parties had been previously married and divorced. The Kenyons received a judgment of divorce on June 30, 1993. The divorce decree awarded an equal division of property. Mr. Kenyon was awarded the family residence and was ordered to make the mortgage payment and other related payments for the residence. In addition, Mr. Kenyon was ordered to obtain refinancing and

compensate Ms. Kenyon $14,690 for her interest in the marital estate. The circuit court also ordered maintenance of an indefinite term to be paid by Mr. Kenyon in the amount of $866.66 per month. In its findings of fact, the circuit court noted that Ms. Kenyon possessed extreme physical disabilities and that there was "no basis upon which to find an earning capacity." The court noted that she was unemployed but was attending a technical school in pursuit of a degree in graphic arts. Thus, the circuit court ordered a mandatory review "as to the amount and continuation of maintenance" in September 1995, stating "[i]t is anticipated by the Court that maintenance shall be paid until approximately the end of summer, 1995, when it is expected that Ms. Kenyon will have completed school and have secured employment."

¶ 5. A maintenance modification hearing was held on November 21, 1995. While the circuit court noted that Ms. Kenyon did not complete school and was not self-supporting as hoped, it nevertheless found a change in circumstances in that she was now steadily employed on a part-time basis making floral arrangements. The circuit court found that Ms. Kenyon received steady income from Social Security and her part-time job. Specifically, the court found that Ms. Kenyon was receiving $448 per month in disability payments from Social Security and was earning $563 per month as a result of her part-time job, which she worked 20 hours per week. Thus, the circuit court found "that a reduction in maintenance is appropriate and that the reduction should be such that the wife has some incentive to increase her earned income from whatever sources she is capable." The circuit court

therefore ordered that maintenance be reduced by $500 a month and that Mr. Kenyon pay maintenance at a rate of $366 a month.

¶ 6. On April 11, 2002, Ms. Kenyon filed a motion to increase maintenance. In her motion, she stated that her medical condition had substantially deteriorated to such an extent that she was "totally incapacitated and unemployable by any definition." A hearing on the motion was held on July 18, 2002. While the circuit court found a substantial change in circumstances because Ms. Kenyon was no longer able to work due to her disability, the court nevertheless concluded that modification of the maintenance award was not warranted. The circuit court concluded that Ms. Kenyon was able to live a very modest lifestyle within her limited means and therefore did not need an increase in maintenance. The circuit court also expressed its opinion that Ms. Kenyon needed to start trying to generate money and stated that it had never intended for Mr. Kenyon to be her primary source of income for the rest of her life.

¶ 7. Thus, on August 11, 2002, the circuit court entered an order denying Ms. Kenyon's motion to increase maintenance. The court of appeals affirmed, concluding that the circuit court did not erroneously exercise its discretion. *Kenyon,* No. 02–3041, unpublished slip op. at 3.

¶ 8. On review before this court, Ms. Kenyon, relying on *Miner v. Miner,* 10 Wis. 2d 438, 441, 103 N.W.2d 4 (1960), contends that the circuit court was required, as a matter of law, to reinstate the amount of maintenance established in the original divorce decree. She argues that when parties' financial circumstances are essentially the same as those at the time of the original divorce decree, the original maintenance order

controls by virtue of issue preclusion or claim preclusion. Thus, Ms. Kenyon asserts that the original judgment of divorce is the baseline from which all changed circumstances must be evaluated and that because the parties' financial circumstances now are essentially the same as they were at the time of divorce, she is automatically entitled to the level of maintenance established by the divorce decree. Further, Ms. Kenyon argues that the circuit court erroneously exercised its discretion because its order forces her to survive at a subsistence level while allowing Mr. Kenyon to preserve the marital standard of living, contrary to *LaRocque v. LaRocque,* 139 Wis. 2d 23, 35, 406 N.W.2d 736 (1987). Ms. Kenyon states that a maintenance modification decision should not be based on whether the payee is able to live parsimoniously on a modest level of income.

¶ 9. In contrast, Mr. Kenyon argues that the circuit court was not obligated, as a matter of law, to restore maintenance to the level established in the divorce decree because the standard for reviewing post-judgment maintenance is not the same as the standard used to derive the initial award of maintenance. According to Mr. Kenyon, under *Johnson v. Johnson,* 217 Wis. 2d 124, 127–28, 576 N.W.2d 585 (Ct. App. 1998), the *LaRocque* "fairness" standard does not apply to modification decisions.[1] Further, Mr. Kenyon argues that although there was a change in circumstances in that Ms. Kenyon was no longer able to work, this change did not warrant an increase in maintenance because it did

---

[1] Shortly after briefing was completed, this court decided *Rohde-Giovanni v. Baumgart,* 2004 WI 27, ¶ 31, 269 Wis. 2d 598, 676 N.W.2d 452, which abrogated the portion of *Johnson v. Johnson,* 217 Wis. 2d 124, 576 N.W.2d 585 (Ct. App. 1998), upon which Mr. Kenyon relied in his brief.

not affect her income level, due to the fact that she was able to decrease her expenses. Mr. Kenyon contends that this court should not reverse the circuit court's decision because the result in this case complied with the applicable law and is one at which a reasonable court could arrive.

## II. STANDARD OF REVIEW

¶ 10. A circuit court decision to modify maintenance is reviewed under the erroneous exercise of discretion standard. *Rohde-Giovanni,* 269 Wis. 2d 598, ¶ 17. "A circuit court engages in an erroneous exercise of discretion when it fails to consider relevant factors, bases its award on factual errors, makes an error of law, or grants an excessive or inadequate award." *Id.,* ¶ 18. However, when reviewing a circuit court's exercise of discretion, we review issues of law de novo. *Id.,* ¶ 19.

¶ 11. Whether claim preclusion applies to a particular factual scenario is a question of law subject to de novo review by this court. *N. States Power Co. v. Bugher,* 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995). In addition, the threshold inquiry in determining the applicability of issue preclusion is whether there is an identity of issues in the two actions. *State v. Miller,* 2004 WI App 117, ¶ 20, 274 Wis. 2d 471, 683 N.W.2d 485. This presents a question of law because it requires the application of a legal standard to undisputed facts. *Id.* (citing *Paige K.B. v. Steven G.B.,* 226 Wis. 2d 210, 224, 594 N.W.2d 370 (1999)).

## III. ANALYSIS

¶ 12. Pursuant to Wis. Stat. § 767.26 (2001–02),[2] a circuit court may, as part of any judgment of divorce, order either party to pay maintenance for a limited or indefinite time after considering the applicable statutory factors.[3] Following a judgment of divorce, a circuit court may "revise and alter such judgment or order

---

[2] All subsequent references to the Wisconsin Statutes are to the 2000–01 version unless otherwise indicated.

[3] The factors a circuit court must consider in setting a maintenance award are:

(1) The length of the marriage.

(2) The age and physical and emotional health of the parties.

(3) The division of property made under s. 767.255.

(4) The educational level of each party at the time of marriage and at the time the action is commenced.

(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7) The tax consequences to each party.

(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

respecting the amount of such maintenance . . . ." Wis. Stat. § 767.32(1)(a). However, "[i]n order to modify a maintenance award, the party seeking modification must demonstrate that there has been a substantial change in circumstances warranting the proposed modification." *Rohde-Giovanni,* 269 Wis. 2d 598, ¶ 30. Yet, "[a]s a general rule, maintenance is always subject to modification upon a showing of the requisite change in circumstances." *Nichols v. Nichols,* 162 Wis. 2d 96, 103, 469 N.W.2d 619 (1991).

■■■■■

¶ 13. The "change in circumstances regarding the need for maintenance payments must relate to a change in the financial circumstances of the parties." *Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 195, 327 N.W.2d 674 (1983). When considering a request for maintenance modification under § 767.32(1)(a), the circuit court must reconsider the factors used to arrive at the initial maintenance award under § 767.26. *Poindexter v. Poindexter,* 142 Wis. 2d 517, 531, 419 N.W.2d 223 (1988). *See also Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 230, 313 N.W.2d 813 (1982)(finding an order terminating maintenance was arbitrary because the circuit court did not consider the factors listed in § 767.26).

¶ 14. Ms. Kenyon argues the circuit court was required to compare the parties' financial circumstances at the time of the modification hearing to those

---

(9) The contribution by one party to the education, training or increased earning power of the other.

(10) Such other factors as the court may in each individual case determine to be relevant.

Wis. Stat. § 767.26.

in existence at the time of the divorce and was obligated, under either the doctrine of issue preclusion or claim preclusion, to provide an award of maintenance equal to that established in the original divorce judgment. According to Ms. Kenyon, such a result is required because the parties' financial circumstances are now the same as they were at the time of the original divorce proceeding and the divorce judgment controls the amount of maintenance under these circumstances. We reject this argument for several reasons.

¶ 15. First, we decline to accept the premise that the appropriate point for factual comparison regarding the parties' financial circumstances at the time of a second maintenance modification hearing is the original divorce proceeding. In *Rohde-Giovanni*, 269 Wis. 2d 598, ¶¶ 33–34, we recognized that during a modification proceeding following a judgment of divorce, the circuit court must compare the facts as they existed at the time of the divorce with the current facts in light of the substantial change in circumstances. However, the present case is distinguishable from *Rohde-Giovanni* in that here the circuit court had, prior to the current motion for maintenance modification, previously entered an order modifying the maintenance award established in the divorce judgment.

¶ 16. When the circuit court has previously entered an order modifying maintenance, it would be inappropriate to use the facts surrounding the original divorce judgment as a baseline for an evaluation of any subsequent substantial change in the parties' circumstances because the circuit court has already found the parties' original financial circumstances to be substantially changed in the first modification proceeding. The original divorce judgment, having been "revised" or

"altered" by virtue of the first modification order, Wis. Stat. § 767.32(1)(a), is not even in effect at the time of the second modification hearing. Pursuant to Wis. Stat. § 767.32(2w), "[a] revision of a judgment or order with respect to . . . maintenance payments has the effect of modifying the original judgment or order with respect to such payments to the extent of the revision from the date on which the order revising such payments is effective." As such, once a maintenance award is modified, the revision is incorporated into the judgment of divorce, replaces the original maintenance award from the date of revision, and has the full force and effect as the original maintenance award.

¶ 17. Thus, at a second modification hearing, the operative maintenance award from which relief is sought is embodied in the circuit court's latest modification order, which order was necessarily based on a finding of a substantial change in circumstances from those existent at the time of the original divorce judgment. *See Rohde-Giovanni,* 269 Wis. 2d 598, ¶ 30. It therefore follows that when a party asserts a substantial change in financial circumstances in a second modification proceeding, the "change" that is asserted is a change from those circumstances that necessitated the first modification order. Automatically reverting back to the facts at the time of the original divorce as the starting point for comparison in such circumstances would be entirely illogical and contrary to § 767.32(2w) because the original maintenance award is no longer part of the judgment at the time of the second proceeding. 

¶ 18. In addition, ignoring the facts that were found at the first modification hearing would be contrary to Wis. Stat. § 767.26(10), which requires a court,

when setting a maintenance award, to consider any other factors that are "relevant" in each case. This court has previously ruled that when setting a maintenance award, the circuit court should examine "all of the circumstances" surrounding the recipient's financial status. *Van Gorder,* 110 Wis. 2d at 198. A previous modification order and the parties' circumstances surrounding such order are certainly relevant factors at a subsequent modification hearing.

¶ 19. In *Harris v. Harris,* 141 Wis. 2d 569, 576–77, 415 N.W.2d 586 (Ct. App. 1987), the court of appeals came to a contrary conclusion, determining, after brief discussion, that the circuit court should compare the parties' financial circumstances at the time of a second modification hearing with those existing at the time of the original divorce.[4] The *Harris* court relied on a passage from *Van Gorder,* discussing the purpose of maintenance, which supposedly "suggested" such a rule. *Harris,* 141 Wis. 2d at 576–77.

¶ 20. However, the sole issue in *Van Gorder* was "whether continuous cohabitation of a divorced person with another person is sufficient ground alone for the termination of maintenance payments . . . ." *Van Gorder,* 110 Wis. 2d at 190. There is nothing in *Van Gorder* that directly or indirectly "suggests" an answer to the question presented here and in *Harris.* Additionally, while the court of appeals in *Harris* did briefly mention § 767.32(1)(a), it merely commented that the statute was "broad." *Harris,* 141 Wis. 2d at 576. The *Harris* court never considered that § 767.32(1)(a) allows a circuit court to "revise" or "alter" a judgment; nor

[4] Neither party discussed or cited *Harris v. Harris,* 141 Wis. 2d 569, 415 N.W.2d 586 (Ct. App. 1987), as it relates to this issue.

did it consider that under § 767.32(2w), a revised maintenance award modifies the original divorce judgment with respect to such payments. As such, we are not persuaded by the court of appeals' decision in *Harris* on this point.

¶ 21. Therefore, we conclude that during a second maintenance modification proceeding, the appropriate comparison regarding any change in the parties' financial circumstances is to the set of facts that existed at the time of the most recent maintenance order, whether such order is contained in the original divorce judgment or was entered as part of a subsequent maintenance modification proceeding. In addition, we reject the argument that once the circuit court has found a substantial change in the parties' financial circumstances, either issue preclusion or claim preclusion may *require* the circuit court to reinstate the amount of maintenance established in the original divorce decree.

¶ 22. Issue preclusion, formerly referred to as collateral estoppel, "refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in a prior action." *N. States Power Co.*, 189 Wis. 2d at 550. As noted *supra,* the threshold inquiry in determining the applicability of issue preclusion is whether there is an identity of issues in the two actions. *Miller,* 274 Wis. 2d 471, ¶ 20. Under the doctrine of claim preclusion, formerly known as res judicata, a final judgment in an action is conclusive between the parties or their privies in all subsequent actions or proceedings in relation to all matters that were or could have been litigated in the former proceeding. *N. States Power Co.*, 189 Wis. 2d at 550.

¶ 23. We conclude that neither doctrine is applicable to a maintenance modification proceeding after a circuit court has found the parties' financial circumstances to be substantially changed, especially when the judgment of divorce has been revised by a previous order modifying maintenance payments. Simply stated, once a party has demonstrated the requisite substantial change in circumstances since the time of the operative maintenance award, a maintenance modification proceeding does not present the same issues or claims that were originally litigated during the divorce proceeding. As this court has previously stated,

> "The [circuit] court's power to modify the provisions of the judgment of divorce is not the power to grant a new trial or to re-try the issues determined by the original hearing, but only to adapt the decree to some distinct and definite change in the financial circumstances of the parties . . . ."

*Van Gorder,* 110 Wis. 2d at 195 (quoting *Thies v. MacDonald,* 51 Wis. 2d 296, 302, 187 N.W.2d 186 (1971)).

¶ 24. Ms. Kenyon is correct that we did state in *Miner,* 10 Wis. 2d at 441, that "[w]hen a court in a divorce action awards alimony, it is based upon the circumstances of the parties at the time of the judgment and is normally considered res adjudicata as to *that* situation." (Emphasis added.) However, she misconstrues this statement when she argues that the initial amount of a maintenance award may be binding at a subsequent modification proceeding. The quoted material from *Miner* simply explained that a judgment of divorce should not be modified unless "there is a sub-

stantial or material change in the circumstances of the parties which would justify such modification." *Id.* We reiterated this point last term in *Rohde-Giovanni,* when we stated: "More specifically, the circuit court deciding the modification motion may not modify a maintenance award based solely on the fact that, had the parties been before it for their divorce action, that court would have decided the matter differently." *Rohde-Giovanni,* 269 Wis. 2d 598, ¶ 34.

■

¶ 25. Thus, properly understood, *Miner* merely reiterates the long-standing rule that the circuit court must find a substantial change in the parties' financial circumstances before it can modify a maintenance award. In other words, *Miner,* 10 Wis. 2d at 441, simply provides that a judgment of divorce, including the maintenance award contained therein, is a final judgment that precludes relitigation of the issues and claims presented at the divorce proceeding. However, in *Van Gorder,* 110 Wis. 2d at 195, we recognized that once a party has shown the requisite change in circumstances, a circuit court's subsequent decision to modify the maintenance award does not represent a relitigation of the issues or claims presented during the original divorce proceeding. Once a circuit court has determined that there exists a substantial change in the parties' financial circumstances, the decision to modify the maintenance award is committed to the sound discretion of the circuit court. *Rohde-Giovanni,* 269 Wis. 2d 598, ¶ 17. Thus, *Miner* does not address the appropriate level at which maintenance should be set once the circuit court has found a substantial change in the parties' financial circumstances.

¶ 26. In addition, the amount of maintenance established in the original divorce decree cannot be

binding following a subsequent order modifying maintenance because, as discussed *supra,* under § 767.32(2w), an order modifying maintenance revises the judgment of divorce with respect to maintenance payments. Pursuant to § 767.32(2w), an order modifying maintenance revises the original judgment of divorce to the extent of such modification on the date the modification becomes effective. Thus, at a second modification hearing, the amount of maintenance established in the original divorce decree, having been revised to the extent of the first modification order, is no longer part of the judgment of divorce and can have no preclusive effect.

¶ 27. Therefore, we conclude that for purposes of evaluating a substantial change in the parties' financial circumstances in a maintenance modification proceeding, the appropriate comparison is to the set of facts that existed at the time of the most recent maintenance order, whether that is the original divorce judgment or a previous modification order. At the hearing, the circuit court should adhere to the findings of fact made in the previous proceeding and may not retry the issues decided in that proceeding. *See Rhode-Giovanni,* 269 Wis. 2d 598, ¶¶ 33–34. It should compare the facts regarding the parties' current financial status with those surrounding the previous order in determining whether the movant has established the requisite substantial change in circumstances, such that modification of the maintenance award is warranted. *See id.,* ¶ 34. In so holding, we withdraw any language from *Harris,* 141 Wis. 2d at 576–77, suggesting the contrary. Further, once a party has demonstrated the requisite substantial change in financial circumstances, the circuit court is not bound by either issue preclusion or

claim preclusion to reinstate the amount of maintenance established in the original judgment of divorce, especially when the judgment of divorce has been previously revised by an order modifying maintenance payments.

¶ 28. We now address what standards the circuit court must apply in determining the level of maintenance once it has found a substantial change in the parties' financial circumstances. We have previously stated:

> The payment of maintenance is not to be viewed as a permanent annuity. Rather, such payment is designed to maintain a party at an appropriate standard of living, under the facts and circumstances of the individual case, until the party exercising reasonable diligence has reached a level of income where maintenance is no longer necessary.

*Vander Perren,* 105 Wis. 2d at 230. The "appropriate standard" is "a standard of living reasonably comparable to that enjoyed during the marriage." *Id.* at 228 (emphasis omitted). "In other words, the goal of maintenance is to provide support at pre-divorce standards, and this goal may require that the recipient spouse be awarded maintenance above bare subsistence needs." *LaRocque,* 139 Wis. 2d at 35.

¶ 29. In *Rohde-Giovanni,* we noted the dual objectives of maintenance are: 1) support of the recipient spouse "in accordance with the needs and earning capacities of both the recipient spouse and the payor spouse" and 2) "a fair and equitable financial arrangement between the parties." *Rohde-Giovanni,* 269 Wis. 2d 598, ¶ 29. We clarified that the fairness objective

applies both at the original divorce proceeding and at any subsequent modification hearings. We stated:

> [A] court reviewing a previous award of maintenance must not solely limit its inquiry to the support objective. The objective of fairness also must be considered, even in postdivorce proceedings. Fairness must be considered with respect to the situations of both parties in determining whether maintenance should be continued indefinitely, continued for a limited amount of time, reduced, or terminated.

*Id.,* ¶ 31.

¶ 30. In so ruling, we withdrew language from *Johnson,* 217 Wis. 2d at 128, that held to the contrary. *Rohde-Giovanni,* 269 Wis. 2d 598, ¶ 31. We emphasized that "the correct test regarding modification of maintenance should consider fairness to both of the parties under all of the circumstances, not whether it is unjust or inequitable to alter the original maintenance award." *Id.,* ¶ 32.

¶ 31. In the present case, the circuit court found a substantial change in the parties' financial circumstances since the previous hearing because Ms. Kenyon was no longer employed as a result of her disability. The circuit court noted that Ms. Kenyon's disability had become worse since the time of the original divorce decree. However, the circuit court stated that while the initial maintenance decision was proper, "Mr. Kenyon is probably going to be on the hook forever. And I don't think anybody really wanted that to happen."

¶ 32. The circuit court noted that there were "some very, very compelling considerations on each side." The court emphasized that it was aware that as a

result of her disability, Ms. Kenyon was living a hard life and was forced to make tough decisions regarding her own care. The court noted that Ms. Kenyon faced the hard choice of taking medication to bring her pain to bearable levels and maintaining some level of activity. However, the circuit court stated, "at some point, looking to Mr. Kenyon as the answer to all of this really isn't right." The court stated that it was time for Ms. Kenyon to start thinking about generating some income.

¶ 33. Regarding the appropriate level of maintenance, the circuit court reasoned:

> I'm not seeing a great need for more maintenance. Now, would I want to live on the amount of money that Ms. Kenyon is living on? No. Is she in any way asking that Mr. Kenyon support some kind of high life? No.
>
> I think she's amazingly penurious and I'm very impressed by her ability to function on such minimum amounts of money. But under the order that was in place and even given the admitted fact that Mr. Kenyon was not paying maintenance for quite a period of time, no debts are listed. There's no showing that Ms. Kenyon needs more money to maintain herself at this relatively modest level of living.

¶ 34. The circuit court ultimately concluded that an increase in maintenance was not warranted:

> Her health situation appears to have deteriorated but she is getting benefits. I don't see that Mr. Kenyon is making all that much more money then he was making at the time. And again, I think there has to be some pressure placed, which is difficult to do for a person in Ms. Kenyon's condition, but I think just about every time I have come back to look at the case, Ms. Kenyon's focus has been restricted to her health situation and not towards any efforts she could make toward improving her financial situation.

70

And it never was my intention to put Mr. Kenyon on the hook for being a primary source of income or life support for Ms. Kenyon. So while I find a change in circumstances, I am having trouble finding the need, especially in light of Ms. Kenyon's own expert telling me that he believes it is possible that some part-time, even homework, work at home, could occur.

. . . .

. . . I'm just not seeing the need to increase the maintenance beyond its current amount and so I do deny the motion to increase maintenance and continue the maintenance at the level it currently is.

¶ 35. When rendering its decision, the circuit court did not have the benefit of our recent decision in *Rohde-Giovanni.* Under the previous standard for maintenance modification, a circuit court could modify a maintenance award if, after finding a substantial change in the parties' financial circumstances, it found that "it would be unjust or inequitable to strictly hold either party to the judgment." *Miner,* 10 Wis. 2d at 441–42. Furthermore, under *Johnson,* 217 Wis. 2d at 128, a circuit court was precluded from considering the fairness objective when deciding whether to modify a maintenance award. Here, it is apparent that the circuit court was proceeding under this older standard. The circuit court focused almost exclusively on Ms. Kenyon's need for additional maintenance at her current standard of living and, in compliance with *Miner* and *Johnson,* whether it would be inequitable to force Mr. Kenyon to pay additional maintenance for an indefinite period. The circuit court did not consider the fairness objective in relation to both parties when determining whether to modify the maintenance award.

71

¶ 36. Mr. Kenyon attempts to recast the circuit court's decision in light of the standards established in *Rohde-Giovanni*. However, it is clear that the circuit court proceeded under an incorrect standard of law, and we simply do not know how the circuit court would have determined the matter had it applied the correct standard, as set forth in *Rohde-Giovanni*. Thus, because the circuit court applied an incorrect standard of law, we conclude that it erroneously exercised its discretion in denying Ms. Kenyon's motion to increase maintenance. On remand, the circuit court must reconsider the matter in light of our decision in *Rohde-Giovanni*.

■

¶ 37. We reiterate that while maintenance is not meant as a lifetime annuity, the goal of maintenance is to allow the parties to maintain a standard of living reasonably comparable to that enjoyed during the marriage. *Vander Perren*, 105 Wis. 2d at 228, 230. When setting the amount of maintenance or considering a motion to modify a maintenance award, the circuit court should consider the support objective "in accordance with the needs and earning capacities of both the recipient spouse and the payor spouse." *Rohde-Giovanni*, 269 Wis. 2d 598, ¶ 29. In addition, the court must consider "fairness to both of the parties under all of the circumstances, not whether it is unjust or inequitable to alter the original maintenance award." *Id.*, ¶ 32.

## IV. CONCLUSION

¶ 38. We hold that for purposes of evaluating a substantial change in the parties' financial circumstances during a maintenance modification proceeding, the appropriate comparison is to the set of facts that existed at the time of the most recent maintenance

order, whether that is the original divorce judgment or a previous modification order. At the hearing, the circuit court should adhere to the findings of fact made in the previous proceeding and may not retry the issues decided in that proceeding. It should compare the facts regarding the parties' current financial status with those surrounding the previous order in determining whether the movant has established the requisite substantial change in circumstances, such that modification of the maintenance award is warranted. Further, once a party has demonstrated the requisite substantial change in financial circumstances, the circuit court is not bound by either issue preclusion or claim preclusion to reinstate the amount of maintenance established in the original judgment of divorce, especially when the judgment of divorce has been previously revised by an order modifying maintenance payments.

¶ 39. In addition, we conclude that the circuit court applied the wrong legal standard when it denied Ms. Kenyon's motion because its decision focused chiefly on Ms. Kenyon's need for maintenance at her present standard of living and whether it would be inequitable to force Mr. Kenyon to pay additional maintenance for an indefinite period. In *Rohde-Giovanni,* 269 Wis. 2d 598, ¶ 31, we clarified that once a substantial change in the parties' financial circumstances is demonstrated, the circuit court must consider the dual maintenance objectives of support and fairness when modifying a maintenance award. Here, in conformity with the controlling precedent at the time, the circuit court did not consider the fairness objective in relation to both parties.

¶ 40. Therefore, we reverse the decision of the court of appeals and remand for a new hearing under the appropriate legal standard. On remand, the circuit

court should, pursuant to *Rohde-Giovanni,* consider the support of the recipient spouse "in accordance with the needs and earning capacities of both the recipient spouse and the payor spouse[,]" and should consider "[f]airness . . . with respect to the situations of both parties" in deciding whether the maintenance award should be modified. *Id.,* ¶¶ 29, 31.

*By the Court.*—The decision of the court of appeals is reversed and remanded.

¶ 41. SHIRLEY S. ABRAHAMSON, C.J., did not participate.