IN RE the MARRIAGE OF:

William E. JOHNSON, Petitioner-Appellant,†

v.

Donna M. JOHNSON, Respondent-Respondent.

Court of Appeals

*No. 98–2141. Submitted on briefs December 4, 1998.—Decided February 3, 1999.*

(Also reported in 593 N.W.2d 827.)

†Petition to review denied.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Timothy R. Young* of *Dempsey, Magnusen, Williamson & Lampe, LLP* of Oshkosh.

On behalf of the respondent-respondent, the cause was submitted on the brief of *William Manske* of *Manske Law Office* of Oshkosh.

Before Snyder, P.J., Brown and Anderson, JJ.

BROWN, J.   William E. Johnson appeals from an order modifying the amount of maintenance he must pay to his former wife, Donna M. Johnson. He contends that the trial court erred in setting maintenance above 50% of the total household income at the time of the divorce. We conclude that the trial court's decision on

maintenance was reasonable and in accordance with the law. We therefore affirm.

The facts of this case are related in a previous published opinion of this court and we recount only those integral to this appeal. *See Johnson v. Johnson,* 217 Wis. 2d 124, 576 N.W.2d 585 (Ct. App. 1998) (hereinafter *Johnson I*). The couple's total household gross annual income at the time of the divorce was approximately $24,000.[1] The modification order at issue on this appeal set maintenance at $230.95 per week. This was reduced from the $233.00 per week award that was appealed in *Johnson I*.[2] Further facts will be related as necessary.

---

[1] According to William's brief, the parties' 1979 income tax returns show a total gross annual income of $24,576. While he includes copies of these returns in his appendix (though he does not so indicate when he refers to them), he has not directed us to these tax returns in the record. *See N.J.W. v. State,* 168 Wis. 2d 646, 654, 485 N.W.2d 70, 73 (Ct. App. 1992) ("We need not search the record to find support for [a party's] assertions."). The circuit court found that William's monthly net income was $1400. This was the figure quoted in *Johnson I. See Johnson v. Johnson,* 217 Wis. 2d 124, 125, 576 N.W.2d 585, 586 (Ct. App. 1998). For purposes of this opinion, we adopt another figure mentioned in the circuit court's decision—$24,000 total gross annual income—because William bases his argument on gross rather than net income. That this figure is less than the amount William uses helps rather than hurts the factual basis for his argument.

[2] In *Johnson I*, we held that the circuit court had erred by basing its decision on the "fairness objective." *See Johnson,* 217 Wis. 2d at 127, 576 N.W.2d at 587. In a postdivorce modification petition, the threshold issue is "whether the parties met their burden of establishing a substantial change in circumstances after the divorce warranting a modification of maintenance." *Id.* at 128, 576 N.W.2d at 587. In *Johnson I,* the circuit court had

The amount of a maintenance award is within the sound discretion of the trial court. *See Gerrits v. Gerrits*, 167 Wis. 2d 429, 440, 482 N.W.2d 134, 139 (Ct. App. 1992). We will uphold the trial court's determination as long as the record demonstrates that the court employed a " 'process of reasoning' in which the facts and applicable law are considered in arriving at 'a conclusion based on logic and founded on proper legal standards.' " *Id.* at 441, 482 N.W.2d at 139 (quoted source omitted). Furthermore, we must uphold the trial court's properly-reached discretionary decisions even if we would have arrived at a different result.

We can summarily dispose of William's first argument. William asserts that "the trial court's Decision on Remand was arbitrary and seemingly in defiance of the Courts of Appeals' direction to it." William accuses the trial court of "arbitrarily focusing on the facts it wanted to reach its preordained result." We have reviewed the trial court's decision and there is nothing arbitrary or defiant about it. The court analyzed the proper factors and came to a reasoned decision. There was no misuse of discretion in this respect.

William's main argument must be addressed at length. He claims that it was error for the court to set maintenance so that Donna's monthly income is higher than 50% of the couple's combined income at the time of the divorce. According to William, maintenance may not, as a matter of law, be set so as to pass this 50% ceiling. William calculates this cap by adjusting the total household income for cost of living increases due to inflation, reducing the amount by 29% to account for

not determined whether there had been such a change. On remand, this question was answered, and William's only challenge on this appeal goes to the amount of the award.

the support of the three children, and then dividing by two.[3] Using this analysis, we start with the $24,000 total household income at the time of the divorce. Using William's 124% increase due to inflation, we have $53,760. Reducing this by 29% for the support of the children, now grown, we have $38,169.60. Half of that is $19,084.80. According to William, no maintenance award should bring Donna's total annual income above this figure. Donna's premaintenance gross income is $1399.00 per month, or $16,788 per year.[4] With maintenance set at $230.95 per week, Donna's annual income totaled $28,797.40. William objects to the fact that this "exceeds the pre-divorce standard of living . . . by nearly $10,000.00 per year."

William's ceiling proposal places too rigid a definition on "standard of living" and ignores the fact that it is cheaper to maintain one household than two. First, William equates "standard of living" with income. While we recognize that "it is *reasonable* to consider an equal division of total income as a starting point in determining maintenance," *LaRocque v. LaRocque,*

---

[3] Donna urges this court to reject William's cost of living increase factor (124% from 1979 to 1997), claiming that the factor was never introduced into evidence. We need not decide whether it was properly introduced, or whether the figure is correct. Nor need we decide if the 29% reduction for support of the children is appropriate. Instead, we accept the figures for argument's sake alone.

[4] This figure is based on the circuit court's finding in the order appealed in *Johnson I, see Johnson I,* 217 Wis. 2d at 124, 576 N.W.2d at 585, that Donna grossed $1399.00 per month. In its decision on remand, the court found Donna's net income to be $985.00 per month. These figures are not necessarily inconsistent. We use the gross figure from *Johnson I* as this is the figure William used to develop his argument.

139 Wis. 2d 23, 39, 406 N.W.2d 736, 742 (1987) (emphasis added), an equal division of income is not the only starting point. Here, the trial court looked at the type of lifestyle the parties maintained during the marriage, considering such factors as home ownership, insurance coverage, vacation time and hobbies. It then determined the amount necessary for Donna to maintain a comparable lifestyle and based its maintenance award on this determination. Far from being irrational, this analysis may very well come much closer to a realistic approximation of the maintenance necessary to support the predivorce standard of living than a rote calculation based on income.

Second, and related to our last statement, the fact that maintaining two households is more expensive than maintaining one means that 50% of the total income at the time of the divorce will rarely allow either of the parties to maintain the marital standard of living. In most cases, both parties will take a cut in lifestyle as a result of the divorce. *See id.* at 35, 406 N.W.2d at 741; *Gerrits,* 167 Wis. 2d at 439, 482 N.W.2d at 138 ("[I]t is only the very rare couple who can maintain a predivorce living standard after parting."). Fifty percent of the predivorce income is often taken as a starting point because maintenance of the payee spouse at the predivorce standard of living is not feasible—the payor cannot afford it. *See Gerrits,* 167 Wis. 2d at 439, 482 N.W.2d at 138–39 ("This is one of those rare cases where [the payor's] good fortune will allow [the payee] to maintain her former standard of living . . . ."). But, the goal is that standard of living enjoyed during the marriage, not 50% of the total predivorce income. Here, the trial court's analysis was a clear attempt to approximate the predivorce standard of living. And here we have a situation where the payor's increase in

income allows maintenance of that standard of living without undue hardship.[5] We will not overturn the court's determination.

■

We feel compelled to clarify what this opinion does not say. A payee spouse is not entitled to maintenance allowing a lifestyle above and beyond the predivorce standard of living. Just because the payor has achieved a position that enables him or her to live a richer lifestyle than that enjoyed during the marriage does not mean that the payee may share this lifestyle as well through maintenance. For example, in *Gerrits*, the payor won the lottery. *See id.* at 433, 482 N.W.2d at 136. This justified an increase in maintenance, since the payor could now afford the amount necessary for the payee to live at the marital standard. *See id.* at 439, 482 N.W.2d at 138–39. But, this did not mean that the payee was entitled to an interest in the lottery winnings. *See id.* at 434–35, 482 N.W.2d at 137. "[S]he [was] entitled only to maintenance at a level reasonably necessary to maintain the standard of living she enjoyed during the marriage . . . ." *Id.*

Finally, we point out that this is not a case where the maintenance award was based on the payor's anticipated increase in salary. *See Hefty v. Hefty*, 172 Wis. 2d 124, 493 N.W.2d 33 (1992). In *Hefty*, much of the payor's salary was in the form of bonuses. *See id.* at 129, 493 N.W.2d at 35. Thus, fluctuations in salary were inevitable, but their amount was unpredictable. *See id.* at 132, 493 N.W.2d at 36. This situation met the "very unusual circumstances" test established in *Poindexter v. Poindexter*, 142 Wis. 2d 517, 533, 419 N.W.2d 223, 230 (1988). *See Hefty*, 172 Wis. 2d at 132,

---

[5] William's current income is $4500 per month, not including his present wife's income.

493 N.W.2d at 36. Because the payor was already receiving fluctuating bonuses at the time of the divorce, and it was anticipated that these bonuses would continue to form a substantial part of his income, a percentage award of maintenance was justified. *See id.* We caution, however, that *Hefty* should not be read too broadly.

It was the very unusual circumstances that drove the *Hefty* case. The parties in *Hefty* "lived in a modest and frugal fashion while building a base for future affluence," *id.* at 135, 493 N.W.2d at·37, and this justified capturing future anticipated bonuses in the maintenance award. But while the facts in *Hefty* may have justified a departure from limiting maintenance to the standard of living enjoyed during the marriage in that case, *Hefty* cannot be read to counter § 767.26(6), STATS. That statute directs the court to consider "[t]he feasibility that the party seeking maintenance can become self-supporting at a *standard of living reasonably comparable to that enjoyed during the marriage*." *Id.* (emphasis added). "There is no rule of law in Wisconsin stating that a recipient spouse is entitled to one-half of the other's salary for the rest of his or her life." *Enders v. Enders*, 147 Wis. 2d 138, 145, 432 N.W.2d 638, 641 (Ct. App. 1988). Here, Donna does not rely on the anticipated income theory to support her maintenance award, so there was no need for her to prove that William's increases in salary were in fact anticipated by the parties. *See Hefty*, 172 Wis. 2d at 134, 493 N.W.2d at 37 (noting that maintenance should not be based on an unexpected increase in income).

In this case, the trial court reached its decision on the amount of maintenance by examining the parties' predivorce lifestyle and the payee's present lifestyle.

The award was meant to use the payor's present income to accommodate, as closely as feasible, the payee's predivorce standard of living. Such an approach is logical, and we will not disturb the result.

*By the Court.*—Order affirmed.