IN RE the MARRIAGE OF:

Sandra K. MURRAY, Petitioner-Respondent,

v.

Patrick R. MURRAY, Respondent-Appellant.

Court of Appeals

*No. 99–1369–FT. Submitted on briefs September 10, 1999.—Decided October 13, 1999.*

(Also reported in 604 N.W.2d 912.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Michael E. Lambert*, of *Dewane, Dewane, Kummer, Lambert & Fox* of Manitowoc, WI.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *H.C. Humke* of *Neumann, Humke, Moir, Mueller & Bohrofen*, of Sheboygan.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. Patrick R. Murray appeals from a postdivorce order modifying a limited-term maintenance provision in the divorce judgment to an award of permanent maintenance. Because the record does not support the family court's determination that a substantial change in circumstances had occurred, we reverse the order.

## FACTS

¶ 2. Patrick R. and Sandra K. Murray ended their twenty-five-year marriage by an uncontested judgment of divorce granted on April 25, 1989. The family court approved the parties' marital settlement agreement that resolved all of the issues between the

parties. The judgment incorporated the agreement by reference.

¶ 3. Because our resolution of this case rests, in part, upon the terms of the agreement, we recite its relevant portions.

> In consideration of the mutual terms and provisions as hereinafter stated, both parties agree that the terms and provisions of this agreement may be incorporated by the court . . . in the conclusions of law and judgment to be entered therein; however, this agreement shall independently survive any such judgment. . . .
>
> . . . .
> Both parties acknowledge that they have entered into this marital settlement agreement of their own volition with full knowledge and information, including tax consequences. *In some instances, the agreement represents a compromise of disputed issues.* Both parties assume equal responsibility for the entire contents of the agreement. Each believes the terms and conditions to be fair and reasonable (under the circumstances). No coercion or undue influence has been used by or against either party in making this agreement. All of the agreement's terms are intertwined and interconnected and shall not be severed or modified. It is agreed that the terms and provisions are interdependent.
>
> . . . .
> Both parties agree that the provisions of this agreement shall survive any subsequent judgment of divorce and shall have independent legal significance. This agreement is a legally binding contract, *entered into for good and valuable consideration.* [Emphasis added.]

¶ 4. The property division provisions of the agreement provided each party with assets valued in

excess of $90,000. Patrick was ordered to pay off the existing mortgage indebtedness on the parties' residence and Sandra received the residence mortgage free and valued at $47,000. In addition, the agreement recited that the parties' other debts incurred prior to the marriage had been paid.[1]

¶ 5.   The marital settlement agreement further provided Sandra with limited-term maintenance for ten years on a downward sliding scale as follows: $800 per month for five years from May 1, 1989 through April 30, 1994; $750 per month for three years from May 1, 1994 through April 30, 1997; and $700 per month for two years from May 1, 1997 through April 30, 1999.

¶ 6.   The parties had no minor children at the time of the divorce.

¶ 7.   On February 15, 1999, with two payments remaining under the limited-term maintenance provision, Sandra filed a motion for a modification of the judgment, seeking a "reasonable sum" of maintenance beyond the April 30, 1999 termination date.

¶ 8.   The evidence at the modification hearing revealed the following. According to the parties' financial disclosure statements filed at the time of the divorce, Sandra had gross income of approximately $14,000 per year and Patrick had gross income of approximately $74,844 per year. By the time of the modification hearing, Sandra's income had increased by approximately $7200 per year and Patrick's income, computed on the basis of a base salary and commissions, had increased by approximately $44,000 per year.

---

[1] Under the agreement, any debt incurred by a party after the commencement of the action was the obligation of such party.

¶ 9.  In 1992, Sandra sold her residence for $64,000 and used the proceeds, with the assistance of a small mortgage, to purchase a condominium for $69,000. However, by the time of the modification hearing, the balance on the mortgage had increased to approximately $60,000. Sandra explained that the increase in the mortgage debt was due to refinancing to pay off credit card and other debts, which she had incurred since the divorce. In addition, at the time of the modification hearing, Sandra had incurred additional credit card and installment debts in the amount of $13,517.77.

¶ 10.  Sandra presented a monthly budget that claimed an approximate shortfall of $1100. Her expenses included a $502 monthly payment on the mortgage and a $275 monthly payment on the additional debt. Sandra was also expending money on behalf of the parties' adult son who resided with her and who has emotional problems that interfere with his ability to work on a steady basis.

¶ 11.  At the time of the divorce, Sandra contemplated continuing with her employment, and she has done so. Thus, she did not seek different employment or attempt to improve her employment skills since the divorce. She has various physical and emotional health problems, but none of these interfere with her ability to maintain her employment.

¶ 12.  The family court's ruling granting Sandra's modification request was based principally on the parties' disparate incomes and Patrick's sizable increase in income since the divorce. The court said:

> However, based upon the significant increase in the dollar amounts that Mr. Murray has experienced since the time of the divorce, the minimal increases that Mrs. Murray has experienced over

76

the same period of time, her ongoing needs for maintenance, and the ability of Mr. Murray to pa[y] maintenance, I find there has been a substantial change in circumstances since the granting of the divorce in 1989.

Following this ruling, the court awarded permanent maintenance to Sandra in the amount of $500 per month. Patrick appeals.

## TEST FOR SUBSTANTIAL CHANGE OF CIRCUMSTANCES AND STANDARD OF REVIEW

¶ 13.  A trial court may modify a maintenance award only upon a positive showing of a substantial change in the financial circumstances of the parties. *See Haeuser v. Haeuser*, 200 Wis. 2d 750, 764, 548 N.W.2d 535, 541–42 (Ct. App. 1996.) A substantial change in circumstances should be such that it would be unjust or inequitable to strictly hold either party to the original maintenance award. *See Rosplock v. Rosplock*, 217 Wis. 2d 22, 33, 577 N.W.2d 32, 37 (Ct. App.), *review denied*, 219 Wis. 2d 922, 584 N.W.2d 123 (1998). The burden of proof lies with the party seeking the modification. *See Haeuser*, 200 Wis. 2d at 764, 548 N.W.2d at 542.

¶ 14.  We will uphold a trial court's findings regarding a change in circumstances unless they are clearly erroneous. *See Rosplock*, 217 Wis. 2d at 33, 577 N.W.2d at 37. However, whether the change is substantial is a question of law which we review de novo. *See id*. But because this legal determination is intertwined with the trial court's factual findings, we nevertheless give weight to the court's decision, despite our de novo standard of review. *See id*.

¶ 15.  Even where there has been a substantial change in circumstances, the ultimate decision

whether to grant a modification of maintenance lies within the trial court's discretion. *See Seidlitz v. Seidlitz*, 217 Wis. 2d 82, 88, 578 N.W.2d 638, 641 (Ct. App. 1998). We will uphold a trial court's exercise of discretion when the record shows that the court employed a process of reasoning in which the facts and applicable law are considered in arriving at a conclusion based on logic and founded on proper legal standards. *See Johnson v. Johnson*, 225 Wis. 2d 513, 516, 593 N.W.2d 827, 828 (Ct. App.), *review denied*, 225 Wis. 2d 491, 594 N.W.2d 385 (1999). We will generally look for reasons to sustain a trial court's discretionary decision. *See Haeuser*, 200 Wis. 2d at 765, 548 N.W.2d at 542.

## DISCUSSION

¶ 16.   Limited-term maintenance has various purposes. *See Bentz v. Bentz*, 148 Wis. 2d 400, 406, 435 N.W.2d 293, 295 (Ct. App. 1988). In most cases, limited-term maintenance provides the recipient spouse with funds for training that might lead to employment, thereby creating an incentive for that spouse to seek employment or better employment. *See id.* (citing *LaRocque v. LaRocque*, 139 Wis. 2d 23, 40, 406 N.W.2d 736, 743 (1987)). When used for this purpose, limited-term maintenance seeks to place the recipient spouse in a self-supporting economic situation by the end of the maintenance period. *See id.* at 406, 435 N.W.2d at 296. The ability of the family court to modify a limited-term maintenance award serves as a "safety net" in a situation where the recipient spouse has not been able to become self-supporting, has not malingered and has accepted as much employment as he or she can obtain. *See id.* at 407, 435 N.W.2d at 296; *see also Fobes v. Fobes*, 124 Wis. 2d 72, 81, 368 N.W.2d 643, 647 (1985).

¶ 17.    Sandra principally relies on *Fobes*. There, as here, the parties entered into a stipulation providing Mrs. Fobes with limited-term maintenance. However, unlike this case, the stipulation stated, "The aforesaid award of family maintenance is for the purpose of providing income to the petitioner so that she might secure the necessary education to become employable." *Id.* at 74, 368 N.W.2d at 644. When Mrs. Fobes was unable to obtain employment within the limited term, she persuaded the family court to modify the judgment to provide permanent maintenance. *See id.* at 76, 368 N.W.2d at 645.

¶ 18.    The supreme court upheld this ruling.

> We conclude that the trial court did not abuse its discretion in modifying the divorce judgment. Under the circumstances of this case, the factual finding by the court of Mrs. Fobes' inability to become self-supporting, *which was the predicate for the limited maintenance provision,* constituted a substantial change in circumstances since the time the divorce was granted.

*Id.* at 81–82, 368 N.W.2d at 647 (emphasis added).

■

¶ 19.    In this case, the record does not support Sandra's claim that the limited-term maintenance was designed to provide funds for employment training or to serve as an incentive to seek more lucrative employment. First, but least important, the agreement does not recite that this was the purpose of the limited-term maintenance provision. Second, Sandra did not provide the family court with a transcript of the original divorce proceeding, which may have revealed discussions about the purpose of the limited-term maintenance provision. This is important in light of the fact that Sandra carried the burden of proof in the

modification proceeding. *See Haeuser*, 200 Wis. 2d at 764, 548 N.W.2d at 542.

¶ 20.    Third, and most important, Sandra's testimony at the modification hearing cuts against her claim that this is a *Fobes* case. Sandra testified that she was satisfied with her employment at the time of the divorce, that she had not sought any other employment during the ensuing years, and that her current employment situation is what she had contemplated at the time of the divorce. Thus, Sandra did not view the limited-term maintenance award as designed to provide her with funds for training that might lead to other, more lucrative, employment or to provide her an incentive to seek such other employment. *See LaRocque*, 139 Wis. 2d at 40, 406 N.W.2d at 743. Under these circumstances, the "safety net" provided by a modification of the limited-term maintenance is neither necessary nor appropriate.

¶ 21.    Although the parties' marital settlement agreement did not envision a *Fobes* situation, this does not mean that we are left to wonder what the parties sought to accomplish. The agreement resolved all of the issues between the parties. The document states: (1) "This agreement is a legally binding contract, entered into for good and valuable consideration"; (2) "In some instances, the agreement represents a compromise of disputed issues"; and (3) "It is agreed that the terms and provisions are interdependent." These provisions reveal that the parties negotiated a brokered agreement by which they respectively gave and received concessions as to the disputed issues. Thus, the agreement served another of the purposes of limited-term maintenance—limiting the responsibility of the payor-spouse to a time certain and avoiding future litigation. *See LaRocque*, 139 Wis. 2d at 40, 406 N.W.2d at 743. In

such a setting, absent a substantial change in circumstances, the parties may rightfully expect that their disputes are in repose and they may move on in their lives with relative certainty.

¶ 22. There is no dispute in this case that the evidence at the modification hearing demonstrated a change in circumstances. However, the critical question is whether those changes were "substantial" within the meaning of the law. As noted, a substantial change in circumstances exists when it would be unjust or inequitable to hold either party to the strict terms of the limited-term maintenance agreement. *See Rosplock*, 217 Wis. 2d at 33, 577 N.W.2d at 37. We construe this to mean that when postdivorce events beyond the control of a party frustrate or impede the goals of the limited-term maintenance, the law will relieve a party from the strict terms of the agreement. But implicit in such a situation is the surmise that both parties will act in keeping with the spirit and intent of the limited-term maintenance award. When a party acts contrary to the goals of the award, that party should not be heard to argue that the consequences of such behavior constitute a basis for modifying the agreement.

¶ 23. That is the situation here. Sandra left the marriage with: (1) a property division asset valued in excess of $90,000, including a mortgage-free residence; (2) no other marital debts; (3) a maintenance program designed to pay her an additional $91,800 over a ten-year term; and (4) intact employment which she intended to maintain. All of Sandra's entitlements under the judgment have been satisfied and all of her expectations during the term of her limited maintenance have been fulfilled.

¶ 24.  The change in circumstances revealed at the modification hearing was brought about by the imprudent financial decisions made by Sandra during the course of the limited-term maintenance period. In 1992, she sold the mortgage-free residence, valued just three years earlier at $47,000, for $64,000. She applied the proceeds, with the assistance of a small mortgage, to the $69,000 purchase price of a condominium. Standing alone, that transaction presents no problem because Sandra was entitled to make that choice, and the transaction did not significantly alter her financial condition. However, Sandra also incurred credit card and other debts producing a refinanced mortgage indebtedness of $60,000. In addition, Sandra had incurred additional credit card and installment debts, not covered by the mortgage, in the amount of $13,517.77. There is no showing that these debts represented unanticipated expenditures or losses. The payments on the mortgage and additional debt totaled $777, the approximate amount of the limited-term maintenance that Sandra was receiving at the time of the modification hearing.

¶ 25.  Fairness and equitable principles underpin the law of substantial change in circumstances. *See id.* This law applies to "either party," not just the recipient spouse. *See id.* We hold that the law of change of circumstances should not require the payor-spouse to finance the unwise or imprudent financial decisions of the recipient spouse. We stress that we are not speaking of unanticipated financial reversals produced by the recipient spouse's financial decisions. Rather, we are speaking of financial decisions that a person should reasonably know would produce economic difficulty or distress. Here, Sandra knew the limits of her employ-

ment and maintenance income as she incurred her additional debts. A reasonable person would have anticipated that the payment of these debts would produce economic difficulty, particularly when the limited-term maintenance terminated. Instead, Sandra conducted her financial affairs as if the limited-term maintenance payments would endure permanently. But it is not the purpose of maintenance—much less limited-term maintenance—to provide a permanent annuity. *See Vander Perren v. Vander Perren*, 105 Wis. 2d 219, 230, 313 N.W.2d 813, 818 (1982).

¶ 26.    Under the facts of this case, we hold that it would be unjust and inequitable to Patrick to break the terms of the parties' agreement and allow for an award of permanent maintenance. *See Rosplock*, 217 Wis. 2d at 33, 577 N.W.2d at 37.

¶ 27.    The family court's decision was pegged principally on Patrick's increase in income. On a threshold basis, we question whether an increase in income from $74,844 to $118,000 over a ten-year period constitutes a substantial change when the compensation is based on a combination of salary and commissions. More important, just because the payor has achieved a position that enables him or her to live a richer lifestyle than that enjoyed during the marriage does not mean that the payee may share this lifestyle as well through maintenance. *See Johnson*, 225 Wis. 2d at 519, 593 N.W.2d at 829. Here, apart from her own imprudent financial decisions, the consequences of which she should have been aware, Sandra has failed to make any showing that Patrick's increased earnings are necessary to maintain her predivorce standard of living.

## CONCLUSION

¶ 28.    Giving due weight to the family court's ruling, we nonetheless conclude under our de novo review that the change in circumstances in this case was not substantial within the meaning of the law. We reverse the order modifying the judgment.

*By the Court.*—Order reversed.