In re the Marriage of:

Jean H. Jantzen, Petitioner-Respondent,

v.

Louis F. Jantzen, Respondent-Appellant.

Court of Appeals

*No. 2006AP1690. Oral argument April 3, 2007.
—Decided June 19, 2007.*

2007 WI App 171

(Also reported in 737 N.W.2d 5.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Carlton D. Stansbury* of *Burbach & Stansbury, S.C.*, of Milwaukee, with oral argument by *Carlton D. Stansbury*.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Richard E. Reilly* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown* of Milwaukee, with oral argument by *Richard E. Reilly*.

Before Fine, Curley and Kessler, JJ.

¶ 1. CURLEY, J. Louis F. Jantzen appeals the order extending the maintenance payments he must pay to his former wife, Jean H. Jantzen, for an additional five years. He argues that the trial court erred when it declared that there had been a substantial change of circumstances since the maintenance order was initially entered following a contested divorce trial, and he submits the trial court failed to explain why Jean required five more years of maintenance. While financial changes have occurred since the inception of the maintenance order, the changes were not substantial changes that rendered the original term of maintenance unfair to Jean. Further, the trial court failed to explain why a five-year extension of maintenance was needed. Consequently, we reverse and remand with directions that the trial court enter orders consistent with this opinion.[1]

---

[1] We are not ordering repayment of any maintenance that Jean received prior to the date of the release of this decision. We leave this matter to the trial court's discretion.

452

## I. BACKGROUND.

¶ 2. Jean Jantzen filed for divorce on April 11, 1995, after almost twenty-three years of marriage and three children. At the time of the filing of the divorce action, one daughter was an adult, and the youngest daughter was eight years old. Another daughter became an adult while the divorce was pending.

¶ 3. This litigation did not go smoothly.[2] There were multiple pretrial motions filed over numerous matters, and the parties' inability to resolve the custody and placement issues led to the appointment of a guardian *ad litem*. A divorce was finally granted on September 18, 1997,[3] following a trial that lasted several days. Despite the granting of the divorce in late 1997, the findings of fact and conclusions of law were not signed by the trial court until April 1998, due to disputes between the parties on what the trial court's rulings were at trial and because of a dispute between Jean and her trial attorney regarding attorney fees.

¶ 4. Following the trial, the divorce judgment was eventually signed. It ordered Louis to make the following maintenance payments to Jean:

> 17. *Maintenance.* Commencing October 1, 1997, respondent shall pay to the petitioner the sum of

---

[2] Since its inception through the post-judgment hearing being appealed, almost a dozen different lawyers have been involved in representing the parties.

[3] In its findings of fact and conclusions of law, the trial court indicated that the divorce was granted on September 18, 1997. However, the record reflects that trial counsel for both parties subsequently advised the trial court that the findings of fact and conclusions of law should have stated that the divorce was granted on September 23, 1997. Nevertheless, because the trial court's findings of fact and conclusions of law were never revised in this regard, we will use the September 18, 1997 date.

$875/month on the 1st day of each month. Said maintenance shall terminate upon the remarriage of the petitioner, her death, her entering into a marriage-like relationship with another individual, or 11 years from the date of the filing of the petition for divorce, to-wit: April 11, 1995, whichever occurs first.

The findings also required Louis to pay child support for the youngest daughter, who was ten years old at the time the divorce was granted, until she was eighteen years of age, or, if she turned eighteen while still attending high school, until she graduated from high school. The Jantzens' daughter graduated from high school in June 2005. The maintenance order was set to expire ten months after the child support was terminated.

¶ 5. In May 2004, Louis brought a motion to modify or terminate maintenance, as there had been a change in the placement of the minor daughter. This motion was denied by the assistant family court commissioner after the commissioner determined that there was no substantial change in circumstances from the time the original order was entered. A little less than a year later, Jean brought a motion seeking to increase maintenance and to require Louis to pay child support (their minor daughter returned to live with Jean after living with Louis for some time). An assistant family court commissioner who heard the motion (by this time the child had turned eighteen years old, graduated from high school, and arrears had been set) recommended that the motion be denied, finding no substantial change of circumstance. Despite his recommendation, the assistant family court commissioner certified the matter to the trial court for a determination. In the meantime, Jean filed an additional motion seeking to extend maintenance beyond the limited term

ordered in the judgment of divorce. After a hearing, the trial court extended Jean's maintenance for five years at the same monetary level, and this appeal followed.

## II. ANALYSIS.

¶ 6. "In order to modify a maintenance award, the party seeking modification must demonstrate that there has been a substantial change in circumstances warranting the proposed modification." *Rohde-Giovanni v. Baumgart*, 2004 WI 27, ¶ 30, 269 Wis. 2d 598, 676 N.W.2d 452; *see* WIS. STAT. § 767.32(1)(a) (2003–04).[4] "We note that, in these circumstances, the focus should be on any financial changes the parties have experienced." *Rohde-Giovanni*, 269 Wis. 2d 598, ¶ 30 (citing *Johnson v. Johnson*, 217 Wis. 2d 124, 127, 576 N.W.2d 585 (Ct. App. 1998); *Gerrits v. Gerrits*, 167 Wis. 2d 429, 437, 482 N.W.2d 134 (Ct. App. 1992)). We affirm the trial court's decision on whether there is a substantial change in circumstances if there is a reasonable basis in the record for the trial court's decision. *Id.*, ¶¶ 17–18. The correct test regarding modification of maintenance is for the court to "consider fairness to both of the parties under all of the circumstances, not whether it is unjust or inequitable to alter the original maintenance award." *Id.*, ¶ 32.

¶ 7. "[F]or purposes of evaluating a substantial change in the parties' financial circumstances . . . the

---

[4] WISCONSIN STAT. § 767.32(1)(a) has since been reorganized and renumbered and is found in WIS. STAT. § 767.59(1f) (eff. Jan. 1, 2007). *See* Wis. Act 443, §§ 148, 267.

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

appropriate comparison is to the set of facts that existed at the time of the most recent maintenance order . . . ." *Kenyon v. Kenyon*, 2004 WI 147, ¶ 38, 277 Wis. 2d 47, 690 N.W.2d 251. The court should compare the facts surrounding the previous order with the parties' current financial status to determine whether the moving party has established a substantial change in circumstances. *Id.*

> The question of whether there has been a substantial change of circumstances presents a mixed question of fact and law. The trial court's findings of fact regarding the parties' circumstances "before" and "after" the divorce and whether a change has occurred will not be disturbed unless clearly erroneous. However, whether the change is substantial is a question of law which we review de novo.

*Dahlke v. Dahlke*, 2002 WI App 282, ¶ 8, 258 Wis. 2d 764, 654 N.W.2d 73 (citations omitted).

*A. The trial court's initial findings.*

¶ 8. We first address the trial court's original findings in assessing maintenance. As noted, the findings of fact and conclusions of law reflect that the trial court ordered limited-term maintenance of $875 to end no later than eleven years from the date of the filing of the divorce petition. Despite these final determinations, the transcript of the trial court's statements regarding maintenance and child support is confusing and contradictory.

> THE COURT: That goes for – how long were these people married, a quarter of a century, 25 years. Well, I'm going – well, as of right now, the maintenance – I'm not going to make that maintenance at the level –

it's indefinite because there's going to be an ending of child support, and that would not be fair to Mrs. Jantzen. I am going to order family support at this time until the child reaches eighteen years of age. And she's how old now?

[LOUIS'S ATTORNEY]: Ten. Your Honor, we have –

THE COURT: I'm sorry. The child support and maintenance is ordered now until she reaches eighteen, absent to change [sic] circumstances, in which case either party can come in. And then at that point in time – that's seven years and there's been – when did the parties separate?

[JEAN'S ATTORNEY]: March of '95.

THE COURT: Okay. And how long has there been maintenance paid?

[JEAN'S ATTORNEY]: It depends on if you want to call it maintenance or whatever. There's never been a maintenance order in effect.

THE COURT: Another four years I would hold the maintenance open. That would be roughly half the length of – I would expect that the parties would come back in when the child reaches eighteen. The maintenance would continue at least at that level as of now; and if either one wants to come in and ask that it be modified, they can. Eleven years that's roughly the length of the marriage.

Inasmuch as the trial court did not order family support, the maintenance was definite and not held open, and the marriage was not eleven years in length, there are significant discrepancies between the trial court's statements on the record and the ultimate orders of the court. More importantly, although post-trial the parties

457

continued to dispute certain of the trial court findings, the amount and length of maintenance were not among the disputed issues. Consequently, the trial court's remarks are of little assistance in ascertaining the trial court's intentions. Besides, the rules of contract construction apply to divorce judgments, *see Jacobson v. Jacobson*, 177 Wis. 2d 539, 546–47, 502 N.W.2d 869 (Ct. App. 1993), and "when a contract is plain and unambiguous, a court will construe it as it stands without looking to extrinsic evidence to determine the intent of the parties," *Rosplock v. Rosplock*, 217 Wis. 2d 22, 31, 577 N.W.2d 32 (Ct. App. 1998).

¶ 9. Notwithstanding the discrepancies in the trial court's statements during the trial, the signed findings of fact and conclusions of law ordered Louis to pay maintenance for a maximum period of eleven years from the date the divorce was filed, and the document does not contain a provision ordering the parties to return for a review either when the child support ended or when the maintenance ended.[5]

¶ 10. Following the testimony at trial, the trial court found that Jean made $26,444.40 a year as a nurse, and the court imputed income to Louis of $101,250. Ultimately, the trial court divided the property on a 50/50 basis, and gave each party credit for payments made while the divorce was pending. Key to our inquiry, the trial court ordered monthly maintenance of $875 for a maximum period of eleven years from the date of the filing of the divorce, after deter-

---

[5] This was a difficult case. We sympathize with the trial court because it inherited this case, which had been pending for two years and had various outstanding pretrial motions needing resolution by the trial judge prior to trial. We note that, in an effort to bring the matter to a resolution, the trial court heard testimony on several days, sometimes into the early evening.

mining Jean and Louis's respective incomes. No provision in the divorce judgment made mention of maintenance running until Jean was sixty years old, nor, as noted, did the court order a review of maintenance when child support ended.

*B. The trial court's modification hearing findings.*

¶ 11. Following the hearing on Jean's motion seeking additional maintenance or an extension of maintenance payments, the trial court issued written findings of fact and conclusions of law. Commenting on the changes since the original divorce, the trial court found that Jean was now making $36,835, but was not working full-time because work was not available. The trial court also determined that Louis's average yearly salary was $115,221, and he testified he worked well over forty hours. In addition, the trial court noted that Louis had remarried and his current spouse was employed, but had health problems (her testimony was that she had recently been diagnosed with multiple sclerosis, which had required her to take medical leave from work). Besides the increased income for both parties and Louis's second marriage, the only other financial change noted in the findings was that the minor child had reached the age of majority.

¶ 12. In justifying its findings on Jean's request for maintenance, the trial court wrote: "The parties anticipated a review of maintenance upon the minor child reaching age 18 and graduating high school." This is not entirely correct. There were two references in the record to a hearing when the child reached age eighteen. Both are found in the series of confusing comments made by the trial court which, as noted, conflict with the divorce judgment. In the first, the trial court said: "The child support and maintenance is ordered

now until she reaches eighteen, absent to change [sic] circumstances, in which case either party can come in." In the second, the trial court observed:

> I would expect that the parties would come back in when the child reaches eighteen. The maintenance would continue at least at that level as of now; and if either one wants to come in and ask that it be modified, they can. Eleven years that's roughly the length of the marriage.

The trial court's first reference to a hearing assumes that maintenance would end at the same time as the child support, and the second reference has the trial court "expecting" the parties to return when the child reaches eighteen. However, the trial court later continued the maintenance for eleven years so that the limited-term maintenance did not end at the same time as the child support, and the findings of fact and conclusions of law make no reference to a review of the maintenance at the time the child support ended. As a result, the parties did not anticipate a review of maintenance when child support ceased, and even if they had anticipated a review, Wis. Stat. § 767.32 would permit a modification only if the change was substantial.

■■■■■

¶ 13. Further, a judge who reviews a request to modify a maintenance award must adhere to the original findings of fact made by the circuit court that handled the parties' divorce proceedings. As stated by this court in *Van Gorder v. Van Gorder*, 110 Wis. 2d 188, 195, 327 N.W.2d 674 (1983):

> The court's power to modify the provisions of the judgment of divorce is not the power to grant a new trial or to re-try the issues determined by the original

> hearing, but only to adapt the decree to some distinct and definite change in the financial circumstances of the parties or children.

*Id.* (citing *Thies v. MacDonald*, 51 Wis. 2d 296, 302, 187 N.W.2d 186 (1971)). Presumably, that directive applies even when the original trial and the post-divorce motion are presided over by the same judge.

¶ 14. In its later decision, the trial court wrote that the "termination of child support and the current economic circumstances of both parties constitutes a change in circumstances justifying continuation of maintenance." We agree that the parties' circumstances changed from those at the time of the divorce. The question is whether the changes were substantial. We think not.

¶ 15. Here, no substantial change in circumstances occurred by the cessation of child support. It was anticipated by the court at the time of the divorce that child support would end in approximately eight years. Moreover, the money paid by Louis for child support was for the support of the child, not Jean. Thus, Louis's child support was never meant for Jean's support. Had the trial court thought Louis should contribute more to Jean's support when the child support ended and Louis would have more money available to pay maintenance, the court could have easily said so or made provisions for a percentage increase or ordered a review. None of these options was utilized.

¶ 16. As to the trial court's conclusion that the "current economic circumstances of both parties constitutes a change in circumstances," the trial court must be referring to the higher incomes of the parties because those are the only financial circumstances mentioned. At the time of the post-divorce hearing, both

parties made more money than they did at the time of the divorce. In evaluating their respective salaries, Jean fared far better than Louis on a percentage basis, with Jean's income increasing by 39%, while Louis's increased only 14%. However, Louis continued to earn approximately three times as much as Jean. Further, if Jean worked forty hours at her present rate of pay, she would push her yearly salary even higher. Thus, the higher income of the parties was not a substantial change in circumstances warranting an extension of maintenance.

¶ 17. In its findings, the trial court also wrote: "Jean has a continuing need for maintenance and even with an extension of the current order will still have far less disposable income per month than her former husband." While arguably correct, Jean's need for maintenance has actually lessened because her income has risen. The fact that Jean has less disposable income than Louis is hardly a substantial change requiring an extension of maintenance because, given their educational and work backgrounds, it was clear at the time of the divorce that Jean was never going to command a salary comparable to Louis's. The trial court's reliance on the fact that Jean "will still have far less disposable income per month than her former husband" as a reason for continuing maintenance is not a change in circumstances because it was a fact known by the trial court when maintenance was originally set. Thus, the continued disparity did not create a substantial change of circumstances. While Louis has remarried and his wife works outside the home, her continued employment is questionable and should not be taken into account as she may not continue working due to her illness.

¶ 18. Additionally, in its findings, the trial court claimed: "The current maintenance award represents 7.6% of Louis'[s] average income and, when considering the tax advantages of paying maintenance, does not represent a financial hardship." First, we suspect Louis would happily forego the tax advantages of paying maintenance payments in exchange for a termination of maintenance. Further, the trial court applied the wrong test. Whether Louis's paying additional maintenance created a financial hardship is not the correct test to employ.

¶ 19. In applying the *Rohde-Giovanni* test for modifying maintenance—considering the fairness to both parties under all of the circumstances—the scales tip in Louis's favor. It would be unfair to require Louis to pay another five years of maintenance when Jean's finances have dramatically improved, and Louis paid his maintenance obligation for eleven years and structured his finances based on his belief that maintenance would end. This is not to say that maintenance can never be modified under appropriate circumstances. Had the trial court clearly indicated that maintenance would be reviewed at the time child support ceased, or said it intended to increase maintenance when child support ended, or ordered indefinite maintenance, then, perhaps, an increase in maintenance may have been warranted. Under the circumstances present here, we can see no unfairness to Jean by holding her to the original determination.

¶ 20. Finally, we observe that the trial court gave no explanation for why maintenance was extended for five years, except to say that it was the court's intention to have maintenance run until Jean was sixty years of age. The court wrote:

> 3. Under the fairness test set forth in *Rhode-*

*Giovanni v. Baumgart,* 2004 [WI] 27, 269 Wis. 2d 598, 676 N.W.2d 452, a continuation of maintenance to Jean is supported, though only for a limited time, until Jean reaches 60 years of age. Case law states that maintenance is not a lifetime annuity; extending maintenance through April 2010 will provide the petitioner maintenance overall for more than one-half the length of the marriage, which is fair to both parties.[6]

(Footnote added.)

¶ 21. We are given no explanation why Jean's age is key to the extension of maintenance or why maintenance should be limited. Why sixty rather than fifty-five? We are not told of any contingencies that make age sixty noteworthy, except that it represents over one-half the length of the marriage. Had the trial court wanted to order maintenance for Jean for one-half the length of the marriage, it could have done so initially. To change one's mind or re-try the issues determined at the original hearing after the fact is not appropriate, and certainly is not synonymous with a substantial change in circumstances. "[A] judge who reviews a request to modify a maintenance award should adhere to the findings of fact made by the circuit court that handled the parties' divorce proceedings." *Rohde-Giovanni,* 269 Wis. 2d 598, ¶ 33.

¶ 22. In sum, the trial court's decision that there were *substantial* changes in circumstances warranting an extension of maintenance was unfounded. Jean's income growth was significant; Louis's income rose modestly. The termination of child support was antici-

[6] Later, the trial court amended the findings to indicate the maintenance would run until April 2011, when Jean turned sixty years of age.

pated. Further, no rationale is given for choosing to extend maintenance for five years. A circuit court's exercise of discretion is erroneous if it makes factual or legal errors. *Rohde-Giovanni*, 269 Wis. 2d 598, ¶ 18. Consequently, we reverse and remand with directions that the trial court enter orders consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.