COURT OF APPEALS
DECISION
DATED AND FILED

May 9, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.   **2021AP821**

STATE OF WISCONSIN

Cir. Ct. No. 2008FA580

IN COURT OF APPEALS
DISTRICT III

IN RE THE MARRIAGE OF:

SUSAN KAY QUARANTA,

JOINT-PETITIONER-APPELLANT,

V.

MICHAEL PALMA QUARANTA,

JOINT-PETITIONER-RESPONDENT.

APPEAL from an order of the circuit court for Eau Claire County: JON M. THEISEN, Judge. *Affirmed*.

Before Hruz, Gill and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Susan Quaranta appeals an order denying her motion to modify the amount and duration of Michael Quaranta's obligations under a limited-term maintenance order.[1] Susan argues that the circuit court erred by applying an improper legal standard that required the relevant substantial change in circumstances be unforeseeable. In the alternative, she argues that the court erroneously determined that there was no substantial change in circumstances. We reject Susan's arguments and affirm.

## BACKGROUND

¶2 Susan and Michael married in February 1992 and subsequently had five children together. The parties later divorced in October 2010, at which time their children were ages seventeen, fifteen, fourteen, eleven and seven. As part of the divorce proceedings, the circuit court granted Susan sole legal custody and primary physical placement of the children.[2] The court also ordered that Michael not receive any periods of overnight placement.

¶3 In reaching its custody and placement decisions, the circuit court recognized that Michael "lacks significantly in his ability to be an effective parent" and that "[h]aving five children under the best of circumstances can be trying. There are always issues. There are always conflicts. There are always problems to be solved." The court ordered that Michael attend counseling sessions "to address his parenting issues and work on his co-parenting skills."

---

[1] Because the parties share the same last name, we will refer to them by only their first names throughout the remainder of this opinion.

[2] The Honorable Benjamin D. Proctor presided over the original divorce proceedings. The Honorable Jon M. Theisen presided over Susan's motion to modify maintenance, which is the motion at issue in this appeal.

¶4      The circuit court also ordered Michael to pay Susan $3,387 per month for child support and $700 per month for maintenance. As each child became emancipated, the corresponding reduction in Michael's child support payments would convert into additional maintenance payments to Susan. In setting child support and maintenance, the court recognized that Susan had a college education, was three credits short of a teaching certificate, and earned approximately $800 per month working part-time. Michael, on the other hand, had been "employed by IBM for many years and earn[ed] approximately $10,500 per month." As noted in Susan's position statement to the court prior to the divorce, Michael "ha[d] increased his income significantly during his years with [IBM]," increasing from $51,590 in 1993 to $128,757 in 2009.

¶5      Although Susan had asked for indefinite family support, in lieu of child support and maintenance, the circuit court ultimately ordered the above-noted combination of child support and maintenance, and it limited the term of Michael's maintenance payments to ten years. The court explained that maintenance would be for only ten years because after that time, the youngest child should be a senior in high school and "[Susan] hopefully will have her teaching certificate and be able to earn a wage where she can be self-sustaining." The court later reiterated its decision, stating: "It is the court's intent that the maintenance aspect of this order will not go beyond ten years."

¶6      In June 2020—with less than one year of maintenance payments remaining—Susan filed a motion to modify the amount and duration of Michael's maintenance payments. Susan alleged that Michael had "refused to provide any meaningful assistance in parenting [their] children," that he "refused to exercise his periods of placement with some or all of them," and that, as a result, Susan was not able to advance her career or "meaningfully increase [her] earning capacity."

Susan requested that maintenance be extended until November 2027—approximately seven additional years—at a rate of $4,083 per month.

¶7      The circuit court held an evidentiary hearing on Susan's motion. Susan testified that she earned her bachelor's degree in elementary education in 1991 but never taught on a full-time basis.  After the parties' divorce, Susan worked in number of different positions, including as a part-time cashier, special education assistant, substitute teacher, and waitress.  Susan testified that she quit her part-time cashier position after Michael failed to exercise his placement of the children on one particular weekend.

¶8      In more recent years, Susan applied for two different full-time teaching positions at a school where she had taught as a substitute teacher, but she did not receive an offer for either position.  However, Susan was later offered a full-time teaching position at an elementary school with starting pay of about $39,000 per year and employee benefits.  Susan ultimately declined that offer because it was an hour commute each way, she felt "burnt out" from teaching, and she was "having major issues" with two children at home.  In July 2020, Susan began working at Kwik Trip, earning approximately $12.75 per hour.

¶9      Susan also testified about the challenges of raising the parties' children.  Susan discussed how one of their daughters repeatedly failed to come home by curfew, threw a glass of wine at a younger sibling, and often argued with Susan.  Susan also noted that one of their sons refused to go to school his senior year after scoring "very well on his ACT test."  Susan said that he had to go to truancy court and that she sometimes left work to get him to school.  Susan further described several instances where she thought Michael undercut her authority and decisions with the children.  In addition, she stated that Michael failed to exercise

4

all of his scheduled placements, that he would return the children early and unannounced, and that he once left their youngest child alone at Susan's home.

¶10 Susan's counselor, Dr. Harlan Heinz, also testified at the hearing. Heinz testified that he had regular meetings and conversations with Susan after the parties' divorce and that they often discussed Susan's challenges with the children and her employment. Heinz noted that Susan has generalized anxiety disorder and had depression in the past. Heinz also observed that Susan has some "Post Traumatic Stress features" but was never diagnosed with PTSD. Heinz opined that Susan would not have been able to complete any advanced training or to teach full-time while she was caring for the parties' minor children. Heinz recognized, however, that Susan was now capable of working as a teacher, but he thought she was "burnt out" and would not be happy doing so. Heinz also noted that Susan had made "great strides in dealing with her anxiety and … depression" in recent years.

¶11 Michael was the final witness. He testified that he continued to work at IBM after the divorce and currently made about $173,000 per year. He said that he had a good relationship with all of the children and that he "always sought to spend time with [them]." In particular, Michael would ask Susan if he could take some of the children on trips, but he eventually stopped asking after he "knew the answer was no." Michael agreed that the children had some challenges growing up, but he disagreed that they "had struggles that most children don't have." Michael acknowledged that he would sometimes take the children's sides in their arguments with Susan, but he asserted that he never directly or intentionally tried to undermine Susan's decisions and that he always encouraged the children to respect her.

¶12     At the end of the hearing, the circuit court made a number of factual findings. The court found that at the time of the divorce judgment, "[i]t was not unforeseeable that [Susan] would have heightened responsibility for parenting." Although the court recognized that there were "some really tough days" and "sleepless nights," the court found that the children did not present "uncommon" behaviors or challenges. Further, the court determined that Michael "ha[d] put in his parenting and his support, he's just done it in his own way, which notably is not [Susan's] way." The court also observed that Susan "attach[ed] too much to [her] opinion of parenting" and did not "have enough deference or respect for [Michael's] parenting."

¶13     The circuit court found that Michael continued working for IBM—a "blue chip" company—and increased his earnings from $131,000 to $174,000, but he "did not go back to school and become a doctor or anything like that." The court recognized that Susan "is not a person driven to occupations just because of higher income" but "[t]hat's a choice she makes." Regarding Susan's mental health, the court noted Dr. Heinz's testimony that Susan "had some symptoms of PTSD" and was "burnt out [from] teaching" but had been doing "a lot better" over the prior couple of years. The court determined that Susan's mental health and her challenges parenting did not "substantially interfere[]" with her taking the full-time teaching position that she had been offered. The court further found that Susan's mental health was not "preventing [her] from income."

¶14     Ultimately, the circuit court denied Susan's motion, concluding that there was not a substantial change in circumstances. The court explained that Michael did not have "an unforeseeable substantial increase in his income" and that Michael did not have "a lack of parenting." The court also noted that the challenges in raising the parties' children were neither a substantial change nor

unforeseeable. Finally, the court stated that it did not believe that Susan's mental health was a sufficient reason as to why she was not teaching.

¶15 Susan now appeals. Additional facts will be provided as necessary below.

## DISCUSSION

¶16 Before a circuit court can modify a prior maintenance order, the party seeking modification must establish "that there has been a substantial change in circumstances warranting the proposed modification." ***Rohde-Giovanni v. Baumgart***, 2004 WI 27, ¶30, 269 Wis. 2d 598, 676 N.W.2d 452; *see also* WIS. STAT. § 767.59(1c)(a)1., (1f)(a) (2021-22).[3] In determining whether there has been a substantial change in circumstances, "the [court's] focus should be on any financial changes the parties have experienced." ***Rohde-Giovanni***, 269 Wis. 2d 598, ¶30. Specifically, the court "should compare the facts regarding the parties' current financial status with those surrounding the previous [maintenance] order." ***Kenyon v. Kenyon***, 2004 WI 147, ¶38, 277 Wis. 2d 47, 690 N.W.2d 251. If the court determines that there has been a substantial change in circumstances, the court must then determine whether maintenance should be modified by considering "the dual maintenance objectives of support and fairness." *See **id.***, ¶39.

¶17 We review a circuit court's determination regarding a substantial change in circumstances for an erroneous exercise of discretion. ***Rohde-Giovanni***,

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

269 Wis. 2d 598, ¶17; *see also Cashin v. Cashin*, 2004 WI App 92, ¶44, 273 Wis. 2d 754, 681 N.W.2d 255 (discussing *Rohde-Giovanni* and concluding that a circuit court makes a discretionary decision in determining whether there was a substantial change in circumstances).[4]   We will uphold a court's discretionary decision "when the record shows that the court employed a process of reasoning in which the facts and applicable law are considered in arriving at a conclusion based on logic and founded on proper legal standards." *Murray v. Murray*, 231 Wis. 2d 71, 78, 604 N.W.2d 912 (Ct. App. 1999).   Whether a circuit court employed proper legal standards is a question of law that we review de novo.   *Ulrich v. Zemke*, 2002 WI App 246, ¶8, 258 Wis. 2d 180, 654 N.W.2d 458.

## I. The circuit court applied the proper legal standard

¶18   Susan argues that the circuit court applied an improper legal standard by requiring her to prove a substantial change in circumstances that was "unforeseeable" at the time of the divorce.   She contends that the totality of the court's comments demonstrate that the court would only have granted her motion if "she could show that any substantial changes in circumstances were unforeseen."

¶19   We are not convinced that the circuit court applied an improper legal standard.   The parties both expressly informed the court at the motion hearing that the relevant standard was a substantial change in circumstances, as reflected in *Rohde-Giovanni*.   The court then employed that standard in both its oral decision and its written order.   Although the court frequently discussed the foreseeability of

---

[4]   The parties both state that we must review the circuit court's decision for an erroneous exercise of discretion.

the present circumstances, it never expressly stated that a change in circumstances *must be* unforeseeable in order to qualify as a substantial change in circumstances.

¶20 Rather, the circuit court's comments demonstrate that it considered the concept of foreseeability in determining whether any changes were substantial. For example, the court first noted in its oral decision that the difference between Michael's income at the time of the divorce and at the time of the motion was equivalent to a cost-of-living increase. The court later stated that Michael did not have an "unforeseeable substantial increase in income." When considered together, these comments show that the court viewed the cost-of-living increase in Michael's income as a fact that would have been expected and anticipated at the time of the divorce judgment; therefore, the court viewed this change in circumstances as insubstantial.

¶21 Likewise, the circuit court's comments regarding the foreseeability of Michael's parenting style and of Susan's struggles with the children show that the court did not find these circumstances to be a substantial change. The court recognized that Michael had a different parenting style than Susan but not a lack of parenting. The court also emphasized that the prior court granted Susan sole custody and primary physical placement of the children, which indicated that "there was not really a big expectation about [Michael's] parenting." Thus, the court recognized that at the time of the divorce judgment, the prior court would have contemplated Susan's increased responsibility for the children and the associated challenges.

¶22 We are also mindful of the broader context of the circuit court's foreseeability comments. Before determining whether there had been a substantial

9

change in circumstances, the court recognized the importance of the prior court's decision and the significance of limited-term maintenance:

> So Judge Proctor made a decision based upon a trial right at the time of the divorce[, and] … I'm going to give great deference to that.… [I]t's important what he decided and it was limited term maintenance, ten years and this formula for support, that's what he decided and great deference is given to that and … not just because he was a judge, but because of the importance of limited term maintenance.

¶23 These comments are consistent with controlling precedent, which requires courts to "adhere to the findings of fact made in the previous proceeding" and to "not retry the issues decided in that proceeding." *See Kenyon*, 277 Wis. 2d 47, ¶2. Significantly, when granting limited-term maintenance, a court must exercise some foresight into the parties' future financial circumstances "[b]ecause limited-term maintenance is relatively inflexible and final." *See LaRocque v. LaRocque*, 139 Wis. 2d 23, 41, 406 N.W.2d 736 (1987). For example, the court must consider "the ability of the recipient spouse to become self-supporting by the end of the maintenance period …; the ability of the payor spouse to continue the obligation of support for an indefinite time; and the need for the court to continue jurisdiction regarding maintenance." *Id.*; *see also* WIS. STAT. § 767.56(1c)(e)-(f), (j). Thus, to avoid second-guessing a prior decision to award maintenance for a limited term, a court could certainly consider the facts foreseen at the time of the original order when determining whether a change in circumstances was substantial.

¶24 These principles are also consistent with prior precedent, which has considered foreseeable facts in determining whether there was a substantial change in circumstances. *See Rosplock v. Rosplock*, 217 Wis. 2d 22, 36-37, 577 N.W.2d 32 (Ct. App. 1998) (concluding that a party's "efforts to maximize the value of her

property division and transform it into additional income was well within the foreseeability of the parties at the time" of the stipulated maintenance and that "the amounts of this income are not of a dimension which constitute a substantial change in circumstances"); *see also* ***Jantzen v. Jantzen***, 2007 WI App 171, ¶¶15, 17, 304 Wis. 2d 449, 737 N.W.2d 5 (considering facts that were "anticipated" at the time of the prior maintenance order). Further, in the context of a child support case, we said that "[o]ne shorthand definition for a substantial change in circumstances is that it is some unforeseen event which occurs after an agreement has been executed." ***Jalovec v. Jalovec***, 2007 WI App 206, ¶24, 305 Wis. 2d 467, 739 N.W.2d 834.

¶25    Finally, the parties' arguments to the circuit court also provide relevant context to the court's foreseeability discussion. In her written submission to the court, Susan argued that "*no one foresaw* the struggles [she] would have with the children, the demands they would make on her time, or the lack of Michael's involvement. *But for those unforeseen and substantial change[s] in circumstances*, Susan would have been able to focus on building her earnings." (Emphasis added.) Susan's attorney again raised the concept of foreseeability at the motion hearing, arguing that "the children had issues that were not foreseen at the … time of trial." Michael's attorney, in turn, also discussed the facts foreseen at the time of the original divorce judgment.

¶26    At one point in the motion hearing, the circuit court attempted to clarify Susan's argument, asking: "Your overture is that that is unforeseeable change in circumstances that is substantial?" In response, Susan's attorney pushed back on the possible notion that a substantial change in circumstances had to be unforeseen, and the court never rejected that position. Thereafter, however, both parties and the court continued to discuss the foreseeability of certain facts at the

time of the original divorce. Accordingly, the court's consideration of foreseeability tracked the arguments advanced by the parties, and it was couched in the overall context of whether the current circumstances reflected a substantial change from those considered in the original maintenance order.

¶27 In short, although the circuit court frequently discussed the foreseeability of the present circumstances, the court's comments do not demonstrate that it changed or deviated from the correct legal standard of whether there had been a substantial change in circumstances. *See* WIS. STAT. § 767.59(1f)(a); *Rohde-Giovanni*, 269 Wis. 2d 598, ¶30.

## II. The circuit court did not erroneously exercise its discretion

¶28 In the alternative, Susan argues that the circuit court erroneously exercised its discretion by determining that there was not a substantial change in circumstances. She contends that there were a number of substantial changes, including: (1) Michael's yearly income increasing by approximately $45,000; (2) her "extraordinary challenges" raising the parties' children; (3) her mental health issues; and (4) Michael's failure to comply with the divorce judgment, including his failure to exercise his placement of the children consistently. Susan recognizes that the last three circumstances are not financial circumstances per se, but she contends that they all impacted her earning capacity.

¶29 Susan's arguments largely ignore the circuit court's factual findings, especially its findings that Michael provided support for the parties' children and did not have a "lack of parenting," that the children did not present "uncommon" challenges or difficulties, that the children and Susan's mental health did not "substantially interfere" with her taking the "more lucrative" full-time teaching position, and that Susan's mental health was not preventing her from obtaining

12

income. Although Susan expresses some dissatisfaction with these findings, she never directly argues that any of them are clearly erroneous.[5] *See* WIS. STAT. § 805.17(2).

¶30 Despite Susan's insistence on appeal that her earning capacity was negatively affected by the challenges with the children, her mental health, and Michael's alleged failure to exercise more placement, the circuit court did not find that any of these alleged circumstances affected her ability to generate more income. To the contrary, the court found that Susan's income had increased overall since the divorce, despite recent decreases, and that she *chose* to pursue a vocation other than teaching, which "would be the most lucrative for her." In other words, the court recognized that Susan had a higher earning capacity than that evidenced by her present income. Indeed, Susan had declined a teaching position that would have paid approximately $39,000 per year, which was well above her projected yearly income of $26,000 as a service associate at Kwik Trip. Again, the court found that neither the parties' children (most of whom were now emancipated) nor Susan's mental health substantially interfered with her ability to take that teaching position. Thus, the court could reasonably determine that Susan had the ability to obtain a higher paying and self-supporting job.

¶31 Susan attempts to sow doubt in the circuit court's finding that she could become a teacher by emphasizing the court's belief that Susan "ha[d] emotional issues which do not sit well with teaching." Susan's argument,

---

[5] In her reply brief, Susan identifies several "undisputed facts" that support her arguments. None of those "facts," however, were found by the circuit court in rendering its decision. Even if we assumed that Susan's facts were undisputed, none of them convince us that the court's ultimate findings of fact are clearly erroneous or that the court could not reasonably determine that there was no substantial change in circumstances.

however, conflates the court's comments about Susan's ability to become a teacher and Susan's suitability for that position. Here, the court reasonably determined that teaching might not have been the best fit for Susan, but it was a career that she was nonetheless capable of obtaining, as evidenced by the prior job offer.[6]

¶32 With regard to Michael's increased income, the circuit court explained that it did not find the increase to be a substantial change in circumstances because "none of it really amounts to anything other than pretty much a cost of living [increase] o[f] two or three somewhere percent per year." The court also found that this increase was not unforeseeable at the time of the divorce judgment. Indeed, Michael's income had increased steadily over his career, including during the marriage. Thus, at the time of the divorce judgment, the parties and the court could have anticipated that Michael's income would continue to increase during the next ten years.

¶33 Susan disagrees with the circuit court's cost-of-living rationale, arguing that Michael's increased income was not the result of cost-of-living adjustments because Michael's income both increased and decreased over the ten-year period. Even if Michael's income did fluctuate, there is nothing unreasonable about the court's decision to view Michael's increased income in the

---

[6] Notably, Susan's financial circumstances at the time of her motion to modify maintenance appear to be consistent with the circumstances the circuit court had anticipated in granting limited-term maintenance. As noted earlier, the court set maintenance for a limited term because it anticipated that the parties' youngest child would be a senior in high school when maintenance ended and that Susan "hopefully will have her teaching certificate and be able to earn a wage where she can be self-sustaining." At the time of the motion hearing, the parties' youngest child was a senior in high school and Susan had the ability to work as a teacher where she could earn nearly $40,000—an income that Susan does not suggest is insufficient.

aggregate and to consider the average increase over the ten-year period. Other than emphasizing the alleged fluctuations, Susan provides no basis for us to disturb the court's finding that Michael's income generally increased consistent with the increased costs of living over time.

¶34 Overall, the circuit court's view of the parties' financial circumstances is consistent with our discussion in *Murray*, where we questioned whether the payor's roughly $43,000 increase in income would constitute a substantial change in circumstances over a ten-year period of maintenance. *See Murray*, 231 Wis. 2d at 83. We further stated that "just because the payor has achieved a position that enables him or her to live a richer lifestyle than that enjoyed during the marriage does not mean that the payee may share this lifestyle as well through maintenance." *Id.* Thus, like the court in *Murray*, the circuit court could reasonably conclude that Michael's increased income over a lengthy ten-year period was not so large as to constitute a substantial change in circumstances.

¶35 Susan attempts to distinguish herself from the payee in *Murray* by arguing that none of her financial circumstances were the result of her own imprudent financial decisions. *See id.* at 82-83. Susan's argument is misplaced, however, because the *Murray* court's discussion of the payor's increased income was not directly premised on the payee's imprudent financial decisions. *See id.* at 83. Furthermore, reasonable persons could disagree that Susan made prudent financial decisions. Despite knowing that Michael's maintenance payments were set to expire in the near future, Susan declined a higher paying, full-time teaching job. Such a decision might have been a good choice from a job-satisfaction perspective, but a reasonable person could also view it as a poor financial decision.

¶36    In sum, the circuit court reasonably determined that Susan's earning capacity and Michael's increased income did not constitute a substantial change in circumstances since the divorce judgment.[7]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Susan also argues in her brief-in-chief that the circuit court erroneously exercised its discretion by not considering the factors in WIS. STAT. § 767.56(1c) or the maintenance objectives of support and fairness. In response, Michael correctly observes that a circuit court need not engage in that analysis if it concludes that there was not a substantial change in circumstances. *See* **Kenyon v. Kenyon**, 2004 WI 147, ¶39, 277 Wis. 2d 47, 690 N.W.2d 251. Susan does not dispute Michael's argument. Accordingly, we need not address Susan's argument because we conclude the court did not erroneously determine that there was no substantial change in circumstances.