COURT OF APPEALS
DECISION
DATED AND FILED

September 25, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP1855**

Cir. Ct. No. 2011FA351

**STATE OF WISCONSIN**

IN COURT OF APPEALS
DISTRICT II

IN RE THE MARRIAGE OF:

ANGELA JEAN STRUNSEE P/K/A ANGELA JEAN LA BRI,

PETITIONER-APPELLANT,

V.

JEFFREY ALAN LA BRI,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Washington County: MICHAEL O. BOHREN, Judge. *Affirmed.*

Before Neubauer, C.J., Reilly, P.J., and Brash, J.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1    PER CURIAM.   In this postdivorce judgment case, Angela Strunsee p/k/a Angela La Bri appeals from an order reducing maintenance and child support from her former husband, Jeffrey La Bri, as the circuit court held that a decrease in Jeffrey's income constituted a substantial change in circumstances.  We conclude that the court did not erroneously exercise its discretion, as its decision was one a reasonable judge could make.  We affirm.

¶2    Jeffrey owns the La Bri Group, LLC, an investment management firm.  Angela has been a homemaker since the birth of their child in 2001.  Angela petitioned for divorce in 2011.  After a lengthy trial to settle property division, legal custody and physical placement of the parties' minor child, and the family support Jeffrey would pay to Angela, the divorce was finalized in May 2017.

¶3    At the time of the divorce judgment, the court found Jeffrey's income to be $793,000: $300,000 in earned income and $493,000 in investment income.  The court imputed to Angela income of $160,000: $60,000 in earned income, per a vocational evaluation, and $100,000 in investment income from a portion of her share of the property division.  The court set monthly family support at $19,050, of which $11,728 represented maintenance and $7322 represented child support.

¶4    The court also awarded Jeffrey the parties' rental real estate assets, eight apartment complexes.  The court declined to award half of them to Angela, as she requested, and instead ordered a $3.88 million equalization payment to her. The court reasoned that Angela did not have the experience necessary to manage real estate of that complexity and that awarding the properties to Jeffrey would allow him to generate the cash needed for support payments.  It ordered that Jeffrey pay Angela $3 million within ninety days and the remaining $880,000 in

four equal annual installments.[1]  Jeffrey appealed and Angela cross-appealed; this court affirmed.

¶5      A week after entry of the divorce judgment, Jeffrey moved, as is relevant here, to reconsider or to modify the family support order on grounds that his investment income was roughly $300,000, not $493,000 and that Angela soon would receive her property-division payment.  Jeffrey did not appear at the motion hearing held on September 26, 2017.  His counsel, retained in a limited capacity to assist at trial and to help him navigate specific legal issues, told the court that she had received no instructions from Jeffrey on representing his interests at the hearing as to family support.  Finding Jeffrey in default, the court denied his motion.

¶6      Jeffrey then sought to secure loans using the apartment complexes as collateral.  He succeeded in getting the loans after agreeing to the banks' requirements that he borrow enough to satisfy the entire $3.88 million equalization payment in a lump sum and to escrow additional funds sufficient to pay for any work the apartments might require.  He borrowed approximately $5.4 million.[2]

¶7      In November 2017, Jeffrey moved to modify family support on the grounds that his gross revenues had decreased, as the La Bri Group no longer received commissions on certain investment products due to new Department of Labor regulations, his real estate mortgage payments had increased, he lost a

---

[1] The court ordered that Angela receive $1 million of the $3 million to do with as she chose.  It then based the imputed $100,000 investment income on the presumption that she would invest the remaining $2 million and receive a five-percent return.

[2] Jeffrey testified that after making the equalization payment to Angela, paying his legal fees, paying off his credit cards, and escrowing $500,000, he was left with $206,179.

business partner who took a portion of the La Bri business with her, and he had fully prepaid $880,000 of the equalization payment to Angela. In a series of two hearings—May 3 and May 24, 2018—the court found that Jeffrey's 2017 income for support purposes now was $638,565 and reduced what Jeffrey was to pay monthly. As the parties this time did not agree to family support, the court ordered $6031 in child support and $1660 in maintenance, for a total payment of $7691. Angela appeals from this order.

¶8     Like an initial support order, a request for modification is addressed to the court's discretion. *Haeuser v. Haeuser*, 200 Wis. 2d 750, 764, 548 N.W.2d 535 (Ct. App. 1996). Discretion is properly exercised "if the record demonstrates that the trial court undertook a reasonable inquiry and examination of the facts and had a reasonable basis for its decision." *Id.* at 765.

¶9     A revision of an order as to the amount of family support may be made only upon a finding of a substantial change in circumstances. WIS. STAT. § 767.59(1f)(a) (2017-18);[3] *Haeuser*, 200 Wis. 2d at 764. The burden rests with the party seeking the change. *Haeuser*, 200 Wis. 2d at 764. A court reviewing a previous award of maintenance must consider both support and fairness to each of the parties. *Rohde-Giovanni v. Baumgart*, 2004 WI 27, ¶31, 269 Wis. 2d 598, 676 N.W.2d 452. The circuit court's findings of fact regarding the parties' circumstances and whether a change has occurred will not be disturbed unless clearly erroneous, but whether the change is substantial is a question of law that we review de novo. *Dahlke v. Dahlke*, 2002 WI App 282, ¶8, 258 Wis. 2d 764, 654 N.W.2d 73.

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless noted.

4

¶10     Angela asserts that the circuit court erred in its redetermination of Jeffrey's income available for support. She contends Jeffrey's diminished income is due to his having to service the debts on the large loans he took out, which were only in part to make the equalization payment and, further, were a fully anticipated consequence he brought on himself. She also suggests the court did an about-face between the two May 2018 hearings at which it made rulings on Jeffrey's November 2017 modification motion. She points out that at the May 3 hearing, the court said it did not view Jeffrey's borrowing as a substantial change in circumstances, as debt service "was part of the underlying assumptions in the case," but then, at the May 24 hearing, found a substantial change in circumstances overall.

¶11     The court did conclude at the May 3 hearing that servicing the debt on the loans did not by itself constitute a substantial change in circumstances, and the court did not reduce Jeffrey's income available for support solely because of it.[4] Rather, it appropriately factored it in to its analysis and carefully spelled out the various factors it considered in determining his income available for support.[5]

---

[4] "Debt service" is the amount of money required to make payments on the principal and interest on outstanding loans. *Debt service*, THE FREE DICTIONARY, https://financial-dictionary.thefreedictionary.com/debt+servicing (last visited Sept. 5, 2019).

[5] We disagree with Angela that *Derr v. Derr*, 2005 WI App 63, 280 Wis. 2d 681, 696 N.W.2d 170, applies. In *Derr*, the former husband asked the circuit court to reconsider his monthly income in light of a loan he took out to make a $157,417 equalizing payment to his former wife, as the monthly payments on the new debt would reduce his monthly income by $845. *Id.*, ¶68. The court declined to do so because the former husband had been less than forthcoming in supplying financial information, such that the court could only approximate his true gross income. *Id.*, ¶69. Here, the circuit court was able to determine the parties' incomes and did not address how monthly payments on Jeffrey's new loans impacted his monthly income.

¶12    The court accepted as accurate the rental real estate net income stated on Schedule E of Jeffrey's 2017 tax return; specified the income amounts it included from the La Bri Group and other sources; and, based on the analyses of two of his property managers in evaluating his multi-unit apartment building investments in light of refinancing and the buildings' current conditions, it accepted their conclusions that the apartments will operate at a loss.

¶13    In addition, contrary to Angela's expert who used rental income *projections*, the court concluded that it must look at the *actual* money available based on the life and operation of the buildings.  The court also added back depreciation deductions as cash available for support and detailed other expenditures it did and did not consider business expenses such that the money was or was not income available for support purposes.  Based on all of those considerations, it concluded that Jeffrey's annual income now was $638,565 and constituted a substantial change in circumstances.

¶14    The court also adjusted Angela's annual income upward to $204,000.  As before, it imputed to her $60,000 in earned income.  But now, Angela having received the full $880,000 in a lump sum instead of in four yearly installments, the court imputed an additional $44,000 in investment income because, as with the $2 million portion of the property division, the court also deemed the $880,000 to be an income-generating asset at five percent earnings.

¶15    The court thoroughly reviewed the parties' big financial picture, of which debt servicing of outstanding loans was an indispensable part.  On the one hand, paying interest on them necessarily reduced Jeffrey's income; on the other, the loans gave Angela millions of dollars in investment assets, thus increasing her income.  We see no error.

¶16    Angela next asserts that the circuit court erred when comparing Jeffrey's current financial circumstances with those as of the date of divorce rather than those at the time of the most recent family support order in September 2017. "[F]or purposes of evaluating a substantial change in the parties' financial circumstances in a maintenance modification proceeding, the appropriate comparison is to the set of facts that existed at the time of the most recent maintenance order, whether that is the original divorce judgment or a previous modification order." *Kenyon v. Kenyon*, 2004 WI 147, ¶27, 277 Wis. 2d 47, 690 N.W.2d 251.

¶17    The parties did not present testimony or evidence at the September 26, 2017 hearing as to their financial positions. Jeffrey did not appear and his limited-scope attorney was not authorized to represent his interests in regard to family support. The denial of Jeffrey's motion thus was not based on its merits but was due to his default. The court therefore did not erroneously exercise its discretion when it compared the parties' current financial situations with those existing at the time of the judgment of divorce.

¶18    In sum, the circuit court gave numerous reasons, not all detailed here, for its conclusion that there was a substantial change in circumstances. Its findings and reasons have record support. Accordingly, we agree with the court's legal conclusion. Angela's dissatisfaction with the court's thoroughly explained decision is not grounds for this court to overturn it as an erroneous exercise of discretion. There was sufficient evidence from which the court reasonably could find a substantial change in the parties' circumstances, such that modification of family support was fair and appropriate.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.